BROWN et al. v. RETSOF MINING CO.

(Supreme Court, Appellate Division, Second Department.    June 29, 1908.)

1. PRINCIPAL AND AGENT—CONTRACTS OF EMPLOYMENT—ACCEPTANCE OF CONDITIONS.

Where sales agents continued to represent their employer under a letter stating that they should continue on the conditions of the original contract so long as they conducted the business in a manner satisfactory to the employer, they must be held to have assented to the condition, not expressed in the original contract, that they should continue so long as they conducted the business in a manner satisfactory to the employer.

2. SAME—RIGHT TO TERMINATE EMPLOYMENT.

Under a contract of employment as sales agents of salt to continue while those employed conducted the business in a manner satisfactory to the employer, the employer is the sole judge of whether their conduct of the business was satisfactory, and the test is not whether the same would have been satisfactory to a reasonable employer, and it is not important to consider whether the employer was actuated by some ulterior motive, such as a desire to make another its sales agent, or that the agents through a long series of years had built up a profitable business as salt brokers.

Appeal from Trial Term, Richmond County.

Action by Edward W. Brown and another, partners, against the Retsof Mining Company. From a judgment for plaintiffs and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

See 112 App. Div. 887, 97 N. Y. Supp. 1130; 113 App. Div. 918, 100 N. Y. Supp. 1108.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

John B. Stanchfield (Henry B. Twombly and Louis H. Hall, on the brief), for appellant.

John A. Garver (George M. Pinney, Jr., on the brief), for respondents.

HOOKER, J. The plaintiffs, copartners, have had a judgment in this action for damages for a breach of a contract of employment.

The defendant was a miner and manufacturer of salt, and the plaintiffs sold it. On May 23, 1899, the parties entered into a contract, by the terms of which the plaintiffs agreed to act as sole selling agent for the defendant within certain specified territory. After defining the obligations and the rights of the parties to the contract, it provided:

"This contract shall continue until June 30th, 1900, unless a change in the firm of Brown & Shaw shall occur by which it is rendered inefficient in the opinion of the Retsof Mining Company to properly and satisfactorily carry out said firm's part of the contract; in that event the Retsof Mining Company may, at its option, terminate this agreement."

On May 17, 1900, the plaintiffs wrote to the defendant in respect to a renewal of the contract, reminding it of the promise that a letter was to be sent them, stating that in the matter of the contract between them for the future it was to be understood that the plaintiffs were to be the selling agents of the Retsof Mining Company "under same conditions as we now are, as long as we continue to conduct the business in as satisfactory a manner as we have done heretofore." On May 21, 1900, the defendant wrote to the plaintiffs, referring to the contract:

"I desire to say that your relations as sales agents of the Retsof Mining Company will continue under the same conditions as outlined in your contract as long as you conduct the business in a manner satisfactory to the Retsof Mining Company. In view of this fact, I do not deem it at all necessary that any formal contract for a specified time be entered into."

Under this arrangement, the plaintiffs acted as selling agents for the defendant until December 19, 1903, on which day they were notified by letter that the relations existing between them and the defendant would terminate on the 31st day of December, 1903. The reason assigned was the conduct of the plaintiff Shaw in using intoxicating liquors too freely. The plaintiffs, claiming that under the obligations of the contract their discharge as selling agents was unreasonable and without warrant, brought this action to recover damages on account of defendant's breach of contract.

The case turns principally upon the question whether under the contract the defendant had the right to discharge the plaintiffs without assigning any cause; or, in other words, whether the contract did not provide that the personal taste, fancy, or interest of the employer should be satisfied, rather than that of a court or a jury. The formal contract of May 23, 1899, provided for a definite term of employment, namely, until June 30, 1900, with only one condition named for its prior amendment, which contemplated a change in the firm of the plaintiffs, a change that the defendant might deem would render the firm inefficient properly and satisfactorily to carry out its part of the contract. The subsequent correspondence, however, between the parties was such as to change the terms of this contract somewhat in respect to the duration of employment after the expiration of the former contract. The defendant wrote that the plaintiffs would continue under the same conditions as outlined in the contract "so long as you conduct the business in a manner satisfactory to the Retsof Mining Company." This letter was received by the plaintiffs and no reply was made there-

to. The plaintiffs continued to represent the defendant as formerly, and must, of course, be held to have assented to the conditions expressed in this letter. The former contract did not refer to the manner in which plaintiffs should conduct the business, except as incident to a change in the plaintiffs' firm. This clause of the letter of May 21st ingrafted upon the contract a new and distinct provision, to the effect that the contract would be continued as long as the plaintiffs conducted the business "in a manner satisfactory," to the defendant.

It is important here to inquire in respect to the nature of the services performed by the plaintiffs for the defendant to ascertain whether they were of such personal, confidential, and peculiar character as to lead to the conclusion that the parties meant to contract with a view of giving the defendant the absolute right to terminate the relationship if its taste, fancy, or satisfaction the plaintiffs did not meet. The plaintiff Brown himself gives the character of the services his firm rendered for the defendant in this wise: The plaintiffs and salesmen they employed sold the salt mined by the defendant to all purchasers they could find, traveling throughout their assigned territory, looking for such customers and following up sales and prospective customers by correspondence. The plaintiffs' office staff attended to many of the details of delivery. Salt that was shipped to New York City, where plaintiffs had their office, came largely in canal boats, and the delivery thereof was rather a complicated question. They found berths for these boats and had them towed thereto, and engaged stevedores to unload and deliver them and in some cases delivered the salt to the buyers. They insured cargoes, and, in the event of loss, collected the insurance—adjusted the claims. They attended to a number of matters in the interest of the defendant other than selling salt. They went to Washington and appeared before the ways and means committee, advocating first the retention of the duty on salt and after the duty had been removed advocating its being put back. They drew up memorials, and devoted a great deal of time to that particular subject. They investigated at the request of the defendant certain patents referring to purifying rock salt, and reported to it concerning them. They visited Cuba with a view of ascertaining the possibility of defendant selling salt there, the expenses of which trip were paid by the defendant. The defendant was a large manufacturer and miner of salt with a growing output and a widening field of business. It manufactured different grades of its products, which sold at different prices. Owing to a larger consumption by some dealers and for other reasons, different prices were made upon the same grade. Freight rates differed widely. Terms of payment by different purchasers varied. It was bound to, and did, adopt peculiar and specific measures for meeting competition. It was engaged in measures to protect the general business of the mining and manufacture of salt and in different lines of effort to create new markets for its product. With all of these matters and others the plaintiffs had to do, in a measure, at least. The plaintiffs maintained personal and confidential relations with the defendant, and the plaintiffs' services were, therefore, such that the parties might well have contracted in respect to gratification of defendant's taste and

the serving of its convenience and individual preferences. And in my opinion that is exactly what the contract purported to do, for it was distinctly provided that it was to continue as long as the plaintiffs conducted the business in a satisfactory manner. The language could not have been plainer. There was no limitation upon the term "satisfactory," as in Smith v. Robson, 148 N. Y. 252, 42 N. E. 677.

In Tyler v. Ames, 6 Lans. (N. Y.) 280, the plaintiff was employed to sell engines and the term of employment was one year, if plaintiff could fill the place "satisfactorily." It was held that this word referred to the mental condition of the employer, and not the mental condition of a court or jury. The court said:

"The right of determining whether the plaintiff filled the place of agent satisfactorily must, from the nature and necessity of the case, belong to the person whose interests are directly affected by the plaintiff's action. To require the employer, under such a contract, to prove that plaintiff did not fill the place satisfactorily would be to require of him an impossibility, unless his own oath was taken as to his mental status on the subject. If he is required to prove facts and circumstances that would justify him in feeling dissatisfied with the manner plaintiff filled his office, it would be annulling this clause of the contract, as, without such a clause, he would have the right to dismiss the plaintiff if he did not properly perform his duties."

In Zeiss v. American Wringer Co., 62 App. Div. 463, 70 N. Y. Supp. 1110, the plaintiff was employed as managing agent for the defendant for selling goods and obtaining leases in the business conducted by the defendant. The contract provided that it should continue for and during such times as the business relations between the parties shall be mutually "satisfactory." This court held that it was for the defendant to determine when the plaintiff failed to fill the place as agent satisfactorily, and that no one was authorized to review its decision. In Crawford v. Mail & Express Publishing Co., 163 N. Y. 404, 57 N. E. 616, the plaintiff was employed to write articles of a certain character for two years, provided his services should be "satisfactory" to the defendant. It was held that, if his services were unsatisfactory to the defendant for any reason, it had the right to terminate the employment, and the defendant was sole judge as to whether the plaintiff's work was satisfactory. See, too, Brown v. Foster, 113 Mass. 136, 18 Am. Rep. 463; Zaleski v. Clark, 44 Conn. 218, 26 Am. Rep. 446.

In view of the defendant's absolute right to discharge the plaintiffs in the exercise of discretion which was not subject to review, it is clearly unimportant to consider the question whether the defendant was actuated by some ulterior motive, such as its desire for the ultimate establishment of the International Salt Company as its selling agent. Nor is it material that the plaintiffs, through a long series of years, had worked up a profitable business as salt brokers. The plaintiffs voluntarily entered into this contract, whose legal effect they must be held to have known. As was said in Brown v. Foster, supra:

"Although the compensation of the plaintiff for valuable service and materials may thus be dependent upon the caprice of another who unreasonably refuses to accept the articles manufactured, yet he cannot be relieved from the contract into which he has voluntarily entered."

The judgment appealed from stands upon the theory that the defendant had no right to discharge at its own volition, and that the plain-

tiffs conduct would have been satisfactory to a reasonable principal or reasonable employer. As we have pointed out, the contract did not admit of that interpretation, and the judgment must therefore be reversed and a new trial granted, costs to abide the event. All concur.