ARTHUR SAMUEL O'NEIL,

*vs.*

E. I. DUPONT DE NEMOURS AND COMPANY.

*New Castle, Jan. 29, 1919.*

Where an inventor, having discovered a new formula for making powder, disclosed it to his employer, relying on promises of compensation if it proved valuable, and the employer without his knowledge used it and made large profits, and also obtained for a nominal consideration an assignment from him of applications for patents, and thereafter tendered him compensation which he deemed insufficient, he has an adequate remedy at law for breach of contract, and therefore cannot maintain a suit in equity for an accounting.

Where an inventor for a nominal consideration assigned applications for patents to his employer, which in addition thereto agreed to compensate him if the invention proved valuable, and the employer used the invention and derived a profit therefrom, the employe could not maintain a bill in equity

for cancellation of the assignment; there being no fraud, actual or constructive, and his remedy being at law on the agreement to compensate.

The failure to so compensate him would not in itself give a right to equitable relief, on the ground of the existence of a confidential relation between the parties.

An inventor has a property right, before patent is obtained, in an invention, which right is enforceable in a court, where he has agreed that another may use the invention in consideration that compensation be paid him in case the invention is found valuable.

Allegations of a bill in equity as to fraud must show the subject-matter constituting the fraudulent conduct, as distinct from the evidence to prove the subject-matter.

Though a bill in equity characterizes defendant's acts by the expressions "fraud," "fraudulently," "fraudulent conduct and practices," where it avers no substantive facts as to fraud, no case of fraud is made out, so as to bring the case within equitable jurisdiction.

STATEMENT OF THE CASE.   The bill alleges that in 1909 and 1910 the complainant, while employed by the government of Brazil, discovered an improved process for the manufacture of propellant explosives, which was of great value, and submitted to one of the directors of a certain powder corporation a full report of the process "for the purpose of selling the same" to that corporation.   About December 15, 1915, the complainant entered into the employment of the defendant company, which in October, 1915, had purchased all the assets and assumed all the liabilities of the powder corporation above mentioned.   In 1914 the powder corporation, without the knowledge or consent of the complainant, manufactured extensively and sold in great quantities powder made in accordance with the complainant's formula, and after the powder company sold out to the defendant, the defendant company continued such manufacture and sale.   The complainant until December, 1915, "was not fully aware" of this use by the two corporations of his process.   He had not theretofore applied for letters patent on his process because of lack of money and because he was waiting to hear from the powder company whether his process was of practical value.

As soon as he learned of the use made of his process, the complainant made inquiries, and on August 9, 1915, the defendant presented to him applications for patents of his process, with

assignments to be executed by him to the defendant company of the full and exclusive right to the process and invention, "*with express understanding that your orator would be compensated for the value of the said process and invention, and relying upon the promises and inducements so held out to him, and relying further upon the bonus plan which had been promulgated by the said defendant company, and the promises of reward therein contained*," he executed and delivered the assignments. The consideration named in the assignments was $5, but the complainant had not received that sum, or any consideration for the use of the process, or for the assignments, although request therefor had been made.

The fifteenth paragraph of the bill as to fraudulent deception, is as follows:

"That your orator was fraudulently deceived by the said defendant company, through and by its said bonus plan and by promises of the said defendant company to properly compensate and pay your orator for the use of his said process and invention, and as a result of the said fraudulent deception and promises, your orator executed the said assignments of the applications for the patents aforesaid, without consideration therefor, with the understanding that he would be amply paid and rewarded by the said defendant company for said assignments to it of the said applications for patents as aforesaid."

Since making the assignments he was informed by the company that the bonus plan did not apply to him. About July 2, 1918, he received from the defendant company a notice that certain benefits under the bonus plan of the company had been granted to him, but he refused to accept the benefits as not being fair or adequate compensation for the assignments.

It was alleged that by reason of undue advantage taken by the defendant company of the confidential relations between employer and employe, and of the distressful financial condition at the time the assignments were made, the assignments were secured by the defendant without consideration, and as the result of the fraudulent promises and practices of the defendant company, he had been deprived of the use of the process, and by the fraudulent use thereof the defendant company had made large profits to which he was entitled, and the powder compnay also made large profits and that the defendant company is chargeable with the profits it made, as well as with the profits made by the powder company, by the fraudulent use of the process.

The prayers of the bill are for an injunction against the taking of any steps to obtain the patents on the process; for a reassignment of the applications for patents; and for an accounting by the defendant of its profits and those of the powder company by use of the process.

To the bill a general demurrer is filed, based on a want of ground for equitable relief or discovery, and also special demurrers as to the insufficiency of the allegations as to the fraudulent conduct of the defendant company towards the complainant.

*Robert Penington*, for complainant.

*William S. Hilles* and *J. P. Laffey*, for defendant.

THE CHANCELLOR.   It appears by sufficient allegations in the bill demurred to that the complainant had discovered a process for making powder and communicated the process and formula to the powder company; that it and the defendant company, which latter company acquired all the assets and assumed all the liabilities of the former company, used the process to make great quantities of powder profitably; that the complainant made applications for patents of the process, and at the request of the defendant company assigned to it the applications for a nominal consideration, and has received no compensation therefor; that so far as appears no patents have been granted; that the complainant communicated the process and formula, made the applications for patents and assigned the applications without consideration, expecting to receive compensation for his invention if it proved to be valuable; that his right to payment for the use made by the defendant and its predecessor, the powder company, of his process was denied, though subsequently compensation, which he deemed inadequate, was tendered to him.

Boiled down, the case of the complainant is this: Having discovered a new formula for making powder, he disclosed it to his employer, relying on promises of reward or compensation by sale or otherwise if it proved valuable, and the employer, with the knowledge of the complainant, used it and not only made large profits by the use of it, but also obtained for a nominal consideration an assignment from the inventor of an application for letters patent on the formula.

Assuming that these facts gave to the complainant a right to enforce compensation from his employer, the vital question raised by the general demurrer is whether his remedy is in a court of law, or in equity. If he has a full, adequate and complete remedy in the former, he has no right to relief in this court. Clearly his right to compensation can be as readily enforced in a court of law as here. In either court he must prove the contract, or facts from which one will be implied, and his damages, or compensation, for the use of his invention. At law he has power to examine the books of the defendant company as fully as in equity. Indefiniteness in the terms of the agreement, or his inability to prove the making of it, do not entitle him to equitable relief. The demand for payment would not create a right in equity, or at law. Neither would the tender of certain benefits under some undefined system of the defendant of giving a bonus to its officers and employes have any greater weight in equity than at law if used as evidence of a recognition of a duty to compensate the complainant. The prayer for an accounting of the profits derived by the use of the process does not of itself give jurisdiction to this court. *Pomeroy's Equity Jurisprudence, Vol.* 1, §§ 176, 178, and *Volume* 4, §§ 1420, 1421; *Dargin v. Hewlitt*, 115 *Ala.* 510, 22 *South.* 128; *Badger v. McNamara*, 123 *Mass.* 117; *Norwich, etc., R. R. v. Storey, et el.*, 17 *Conn.* 364, 390; *Schwalber v. Ehman, et al.*, 62 *N. J. Eq.* 314, 49 *Atl.* 1085.

No reason has been shown why compensation to the complainant cannot be adequately obtained in an action at law, whether the agreement was to pay the complainant a fixed sum for the use of his process, or according to some other gauge for estimating the value of the process to the defendant was agreed upon. If the price was fixed, the amount of the damages were fixed thereby, and if no price was fixed, a *quantum meruit* would afford relief. There is, therefore, no right to relief in this court based on a right to compensation for the use of the process.

The injunctive relief sought and the prayer for a cancellation of the assignments of the applications for patents are, of course, distinctly grounds for relief in a Court of Chancery. But does the complainant show that he is entitled to this relief?

In his brief the solicitor for the complainant seems to regard

the equity of the bill to be the right to have a reassignment of the applications for patents on the ground (1) that they were made without any consideration received by the complainant; (2) that the inadequacy of the named consideration was such as to show itself an imposition on the complainant amounting to fraud; and (3) that fraud on the part of the defendant is proven by the profitable use made by the defendant of the process submitted for sale, such use being without the knowledge or consent of the complainant. Was there no consideration for the assignment? The alleged agreement for compensation for the use of the process was sufficient to support the assignment. There was no allegation of misrepresentation by the assignee of any fact or matter at or before the making of the assignment which would show fraud. The inadequacy of the consideration named in the assignment which was evidently a nominal consideration, was not evidence of a fraudulent purpose, nor did it invalidate the assignments, because according to the bill there was an agreement to compensate in addition to the nominal consideration. According to the bill, the value of the process when disclosed by the complainant to his employer was uncertain and in this point of view the agreement, uncertain as it was as to terms so far as appears by the bill, was not necessarily one-sided or disadvantageous to the complainant.

It was not evidence of fraud or imposition by the defendant upon the complainant for the defendant to make a profitable use of the formula, for it was the understanding that it could and would be so used. Besides, he knew of the use being made of it. He states that he was not "fully" aware of the use made by the defendant of the formula until after December, 1915. This is not, as full or frank a statement as he should have made. At any rate he had such knowledge as should have at least stimulated his curiosity. Whether he knew of this use of the formula on August 9, 1916, when he assigned the applications for patents does not appear. In no event, however, does any matter alleged as constituting fraud or imposition show there was such misconduct on the part of the defendant, but on the contrary they seem to be negatived.

It was urged that there was some confidential relation between

the complainant and defendant arising from his being employed by the defendant, which relation gave him equitable rights which a stranger to such relation would not have. But n this matter the relation of employer and employe had no bearing, and the complainant had no greater rights than a stranger would have had under the same circumstances. Disappointment in his reliance on the promise of his employer to compensate him would not of itself give a right to equitable relief, for his right to compensation according to the bill was based on a contract. Neither would the failure of the defendant to pay the compensation, or give the reward as agreed upon, definitely or indefinitely, give the complainant a right to rescind the agreement, or to cancel the assignments.

In *2 Pomeroy's Equitable Remedies*, § 686, it is thus stated:

"It is, of course, the general rule that the mere failure by a grantee to perform a promise which formed the whole or part of the consideration inducing an executed conveyance, gives rise to no right of rescission in the grantor either at law or in equity, unless such promise amounts to a condition, and it is a rule of construction that in case the language or intention is doubtful the promise or obligation of the grantee will be construed to be a covenant limiting the grantor to an action thereon and not a condition subsequent with the right to defeat the conveyance." *Dawe v. Morris*, 149 *Mass.* 188, 21 *N. E.* 313, 4 *L. R. A.* 158, 14 *Am. St. Rep.* 404; *Piedmont, etc., Co. v. Piedmont, etc., Co.*, 96 *Ala.* 389, 11 *South.* 332.

In *Piedmont, etc., Co. v. Piedmont, etc., Co.*, 96 *Ala.* 389, 11 *South.* 332, land had been conveyed to a new industry under an agreement by the promoters that the new enterprise would be established and operated for two years. A bill to obtain cancellation of the deed based on the failure to keep the agreement was dismissed, the Court saying:

"The mere breach of such a promise, after deed made on the faith of it, would no more authorize the grantor to have the deed annulled by a court of equity than would the failure of a grantee of lands to pay his note given for the purchase money authorize the grantor to rescind the trade and have the title revested in himself."

It is, however, no answer to the complainant's case to say that an inventor has no property right in his invention until he has obtained his patent (1 *Robinson on Patents*, § 24), and that before obtaining his patent he has no right respecting his invention

which he can enforce in a court (*Rein v. Clayton,* [*C. C.*] *37 Fed.* 354, 3 *L. R. A.* 78). Those principles have no application to a case where the inventor agrees that another may use the invention in consideration that compensation be made to the inventor in case the invention be found valuable. Such a contract would be enforceable as between these persons even if the patent never was issued. The law as to patents has no application to the rights and duties of the parties to the agreement under consideration.

The conclusion is that the remedy of the complainant based on a breach of contract is full, adequate and complete at law; that there were no sufficient allegations of matters showing fraud, or imposition; that there was a consideration for the assignments; and that failure to compensate the complainant did not give a right to any relief in a Court of Chancery.

The special demurrer to the inadequacy of the allegations in the bill as to fraud on the part of the defendant will be sustained. Fraud must be alleged as well as proved, and the bill must show the subject-matter constituting the fraudulent conduct, as distinct from the evidence to prove the subject-matter. 1 *Beach on Equity Practice,* § 107.

Where a bill sets forth such leading facts as do not when analyzed show a case of fraud, allegations or averments in the bill that there was fraud, and such expressions as "fraudulently," "fraudulent conduct and practices," and the like, interspersed throughout it, will not bring the case within equitable jurisdiction. *Magniac v. Thomson,* 2 *Wall, Jr.* 209; *Fed. Cas. No.* 8,957. In this cited case the Court at page 254 well stated the general principle thus:

, "A court of equity, when examining a bill of complaint to find a grievance which will justify its interposition, looks to the substantive facts averred in it, not to the adjectives or adverbs which may be added to qualify them."

An examination of the bill will show that this rule has been ignored, for it is not clear as to what facts the complainant had in mind in charging "fraud," "fraudulent promises and practices," and the like.

The demurrer in its general and special aspects will be sustained. But inasmuch as it may be possible to amend the bill, and because it is not proper to order it dismissed, as was done in

another kind of a case (*Cochran v. Cochran*, 2 *Del. Ch.* 17), the only order to be made will be one sustaining the demurrer, with leave to the complainant to apply to amend the bill within a fixed time, and in default of amendment that the bill be dismissed.

Let an order be entered accordingly.