RAISLER SPRINKLER COMPANY, a corporation of the State of New York, v. AUTOMATIC SPRINKLER COMPANY OF AMERICA, a corporation of the State of Delaware.

58

*(January* 4, 1934.)

LAYTON, C. J., RICHARDS and REINHARDT, J. J., sitting.

*John J. Morris, Jr.* (of Hering and Morris), for plaintiff.

*Charles F. Curley* for defendant.

Superior Court for New Castle County, No. 19, May Term, 1933.

LAYTON, C. J., delivering the opinion of the Court:

With respect to the first ground of demurrer, the plaintiff contends that the contract should be so construed as to give a reasonable meaning to all its parts, and not to leave a part of it useless and inexplicable. 2 *Williston, Contr.,* § 619.

Wherefore it argues two questions arise for determination by jury, (1) was the defendant's refusal to extend the license in good faith, (2) was there reasonable ground for the defendant's dissatisfaction.

The defendant contends that the subject matter is one involving opinion and judgment, which when announced is final, and, even if good faith is material, the declaration does not aver bad faith on its part.

 Contracts providing for performance to the satisfaction of a party are classified generally thus, (1) where the subject matter involves fancy, taste, sensibility or judgment, (2) where the subject matter has to do with mere operative fitness, mechanical utility, or commercial value.

To which class does this contract belong? Obviously it is a matter for construction; and consideration must be

given to the subject matter, the language of the contract, the relationship of the parties, the objects to be accomplished and the inducements for contracting. *Nash v. Towne*, 5 *Wall*. 689, 18 *L. Ed*. 527.

The defendant is the patentee and sole manufacturer of the apparatus. By the contract it had granted a non-exclusive license to the plaintiff to buy, use, sell and deal in the apparatus in certain defined territory at a fixed license fee. It agreed to extend the license to cover additional states upon an expressed condition, that the defendant's organization in such additional territory should be sufficient in its, the defendant's opinion.

It is, we think, clear that mere success in making sales of the apparatus was not the sole object of the defendant in granting the license. The volume of sales in the licensed territory was only one factor. Another, and important factor, involved its good will, the handling and servicing of the apparatus when installed.

Both factors, sales and service, depended upon the nature and kind of organization set up in the additional territory. To safeguard both, the defendant took care to constitute itself the judge of the fitness of the organization.

We think the disputed provision of the contract is one involving opinion and judgment, and not one concerning mere operative fitness.

Individuals have, and are entitled to have, different opinions of the sufficiency of sales and service organizations. Ideas and methods differ. What seems sufficient and efficient to one, may be regarded as entirely inadequate by another, and both ideas may be wholly honest. It is not a question of the operative fitness, or the mechanical utility or commercial value of a machine, a mere question of accomplishing work in a reasonable manner. It is a question of theory, of idea, of apprehension and perception of what is necessary to make and constitute a sufficient human

structure, rather than a mechanical contrivance. Opinion and judgment are mental conditions, and there is nothing illegal or immoral in a contract which conceives of a fixed opinion as a conditional fact.

■ With respect to a contract involving preference or judgment providing, as here, that performance by the plaintiff shall be to the satisfaction of the defendant, we think the just rule is this:

> "That the parties must stand to their contract as they have made it, and, if the one party has agreed to do something that shall be satisfactory to the other, he constitutes the latter the sole arbiter of his own satisfaction, at least so long as he acts in good faith and his dissatisfaction is real and not feigned or a mere subterfuge." 2 *Elliott, Contr.*, § 1605.

*Williston, Contr., Vol.* 1, § 44, is to the same effect in this language:

> "Such a promise is usually considered as requiring the promisor to render performance which shall be satisfactory to the promisee, if he exercises an honest judgment. But the promisee must give fair consideration to the matter. A refusal to examine the promisor's performance, or a rejection of it not in reality based on its unsatisfactory nature but on fictitious grounds or none at all, will amount to prevention of performance of the condition and excuse it."

This we consider to be the rule, in effect, laid down by this Court in *Taylor v. Trustees of Poor,* 1 *Penn.* 555, 43 *A.* 613, 614. In this case the plaintiff contracted with the Trustees of the Poor, of New Castle County, to furnish good wheat bread for a given time. The defendant contended that there was a condition annexed to the contract and accepted by the plaintiff, that if the quality of the bread "not be what the superintendent, in his judgment, considered good, he (the superintendent) should have power to cancel the contract. * * *"

The Court instructed the jury that if the condition was accepted by the plaintiff and the superintendent canceled the contract in the exercise of the power granted him, "then the plaintiff cannot recover anything for the breach of the

contract, no matter whether the bread was good or bad, or what may have been the quality thereof, because * * * the superintendent would have been made the judge of the quality of the bread, and his judgment, when exercised, would be final and conclusive."

The Court did not say, nor did it mean to say, that the superintendent could cancel the contract without fair consideration. Such would not be an exercise of judgment, and a failure to consider and judge would be bad faith. We think also the Court meant to say, and did say, that the judgment of the superintendent, honestly exercised, was final and conclusive, and the reasonableness of his judgment was not a matter of inquiry.

Cases will be found holding, apparently, that the question of bad faith is not material in any event, as well as those holding that the question of reasonableness is a matter to be determined by triers of fact. Reconciliation of cases is impossible. Different conclusions have been reached by Courts in cases not always clearly distinguishable on the facts.

Generally see 13 *C. J.* 678; 39 *C. J.* 73; 6 *R. C. L.* 952; 3 *Elliott, Contr.*, § 1881; 2 *Elliott, Contr., supra; Williston, Contr., supra,* and cases cited in these authorities; *Brown v. Retsof Mining Co.,* 127 *App. Div.* 368, 111 *N. Y. S.* 594; *Crawford v. Mail, etc., Pub. Co.,* 163 *N. Y.* 404, 57 *N. E.* 616.

█ With this conception of the rule in mind, does the declaration state a cause of action? We think it does not, for the reason that bad faith on the part of the defendant is not averred.

It is true, the plaintiff alleges that its organization at New Orleans was "eminently fitted and entirely sufficient," but this language, of itself, is the pleader's conclusion, and the expressions must be coupled with the facts concerning its organization set forth in its letter of January 16. When

this letter is examined, and it must be kept in mind that it was in reply to one from the defendant requesting full information concerning the plaintiff's organization in each of the states enumerated, including personnel of sales, engineering and construction departments and the location of offices, it is seen that it only informs the defendant that it has an office in New Orleans and that one Dickson is in charge of it; and that Dickson is the sole sales force in eleven states. The letter, generally, speaks as of the future, and it is difficult to escape the conclusion that the plaintiff was outlining a proposed organization, not an existing, functioning organization. It is to be noticed also that the existing organization, if such it may be called, was confined to the one state of Louisiana, while the demand upon the defendant was to extend the license to eleven states. At best, the plaintiff's explanation of its organization, even in Louisiana, was thin, and we are unable to say, having in mind the positive provision of the contract, that the defendant was not entitled justly to regard as unsatisfactory the plaintiff's organization.

Nor does it appear that the defendant refused to consider the application for extension of license. It asked for full information in order that it might consider it fairly. The letter of refusal is a part of the declaration and it shows that the defendant seriously considered the facts as given it, and declined to extend the license on the ground that the plaintiff's organization for the states mentioned was not satisfactory. There is no averment of substantive fact showing the existence of bad faith.

But, the plaintiff contends the declaration alleges "that the defendant arbitrarily, capriciously, illegally and without any fair or reasonable cause, excuse or justification * * * refused to extend * * * the license," and that this allegation is synonymous with an allegation of bad faith.

Epithetical and criminatory language amounts to nothing in itself. Such language may decorate and embellish but does not constitute substance.

■ Courts regard the averment of substantive facts not adjectives or adverbs which may be added to qualify them. *Magniac v. Thomson, Fed. Cas. No.* 8,957, 2 *Wall. Jr.* 209; *O'Neil v. Du Pont Co.*, 12 *Del. Ch.* 76, 106 *A.* 50.

■ A general allegation of arbitrary and capricious conduct states merely a legal conclusion. *Morley v. Wilson, Police Commissioner of City of Boston*, 261 *Mass.* 269, 159 *N. E.* 41; *Silberschein v. U. S.*, 266 *U. S.* 221, 45 *S. Ct.* 69, 69 *L. Ed.* 256, and so as to a general allegation of bad faith. *State v. Hackley, et al.*, 124 *La.* 854, 50 *So.* 772.

■ We are of opinion, therefore, that in a contract of the kind before us, a refusal by the defendant of an offer of performance by the plaintiff does not give rise to a cause of action unless the refusal, by proper averment of fact and circumstance, is shown to be spurious, or in bad faith.

The sole question of the reasonableness of the defendant's refusal to extend the license is not an issue.

■ We do not understand, as contended by the plaintiff, that the rule in New York permits a jury to decide upon the reasonableness of a party's dissatisfaction in a contract involving fancy, taste or judgment, in the absence of proof of bad faith. *Brown v. Retsof Mining Co., supra; Crawford v. Mail, etc., Pub. Co., supra; Ginsberg v. Friedman*, 146 *App. Div.* 779, 131 *N. Y. S.* 517; *Haehnel v. Trostler*, 54 *Misc.* 262, 104 *N. Y. S.* 533; and see *Console Corporation v. Muskegon Corporation*, 3 *W. W. Harr.* (33 *Del.*) 390, 138 *A.* 598.

■ But another question confronts us. The contract provides that the amount of the license fee for additional

territory shall be determined by the defendant. This ultimate question is whether a contract is enforceable which is silent as to the sum, price, fee or compensation to be paid by one party as a consideration for performance by the other, and where no measure or rule of calculation is given in the contract itself, nor exists by force of extrinsic circumstances.

There is a wealth of authority to be found both in the text books and adjudicated cases. The almost universally accepted rule will be found to support the defendant's second ground of demurrer.

In *R. C. L., Vol.* 6, *page* 648, the rule is stated:

"The general rule is that price is an essential ingredient of every contract for the transfer of property or rights therein or for the rendering of services. In order that an executory contract may be enforceable, it is generally necessary that the price must be certain or capable of being ascertained from the contract itself. By this is not meant that the exact amount in figures must be stated in the contract; but when that is not the case, the price must, by the terms of the contract, be capable of being definitely ascertained."

Again, the same authority, *Vol.* 6, *page* 617, says:

"An agreement to agree to do a certain specified thing, all the conditions of the postponed agreement being specified, is simply an agreement *in præsenti* to do it. However, unless an agreement to make a future contract be definite and certain upon all the subjects to be embraced, it is nugatory. A contract between two persons, upon a valid consideration, that they will, at some specified time in the future, at the election of one of them, enter into a particular contract, specifying its terms, is undoubtedly binding, and, upon a breach thereof, the party having the election or option may recover as damages what such particular contract to be entered into would have been worth to him, if made. But an agreement that they will in the future make such contract as they may then agree upon amounts to nothing. So, to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations."

See, also, 13 *C. J., page* 266.

In 1 *Elliott, Contr.*, § 181, it is said:

"As a general rule, price is an essential ingredient of every executory contract for the sale or transfer of any and all property rights or the furnishing or rendering of services; consequently, if

there is a total absence of any agreement concerning the price to be paid for property, or for services to be rendered, the agreement will not be enforceable."

## In *Williston on Contracts, Vol.* 1, § 43, it is stated:

"One of the commonest kind of promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it merely illusory. * * * But a promise to give anything whatever which the promisor may choose, or to do or give something whenever the promisor pleases, is illusory, for such promises would be satisfied by giving something so infinitely near nothing or by performance so infinitely postponed as to have no calculable value. * * *"

## And again, in *Section* 45, the same Author says:

"Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if something is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise. It should be observed, however, that though such a promise is invalid, it will not necessarily invalidate an entire agreement of which it forms a part. Whether it will have this effect depends upon its relative importance and its severability from the remainder of the contract of which it forms a part."

See *Console Corporation v. Muskegon Corporation, supra; Abeel, et al., v. Radcliff,* 13 *Johns.* (*N. Y.*) 297, 7 *Am. Dec.* 377; *Dayton v. Stone,* 111 *Mich.* 196, 69 *N. W.* 515; *Bird v. Prescott,* 89 *N. J. Law* 591, 99 *A.* 380; *Shaw v. Woodbury Glass-Works,* 52 *N. J. Law* 7, 18 *A.* 696; *Fairplay School Township v. O'Neal,* 127 *Ind.* 95, 26 *N. E.* 686; *Bigley v. Risher,* 63 *Pa.* 152; *Scott v. Wells,* 6 *Watts & S.* (*Pa.*) 357, 40 *Am. Dec.* 568; *Smith v. Ankrim,* 13 *Serg. & R.* (*Pa.*) 39; *Machen v. Budd Wheel Co.,* 294 *Pa.* 69, 143 *A.* 482; *McNeely v. Bookmyer,* 292 *Pa.* 12, 140 *A.* 542; *United Press v. N. Y. Press Co.,* 164 *N. Y.* 406, 58 *N. E.* 527, 53 *L. R. A.* 288, and *note; St. Regis Paper Co. v. Hubbs, etc., Paper Co.,* 235 *N. Y.* 30, 138 *N. E.* 495; *Weegham v. Killefer* (*D. C.*), 215 *F.* 168, 170; *Ansorge v. Kane,* 244 *N. Y.* 395, 155 *N. E.* 683; *Marble, et al., v. Standard*

*Oil Co.,* 169 *Mass.* 553, 48 *N. E.* 783; *Bumpus v. Bumpus,* 53 *Mich.* 346, 19 *N. W.* 29; *Jones v. Lanier,* 198 *Ala.* 363, 73 *So.* 535; *State v. Assoc. Press,* 159 *Mo.* 410, 60 *S. W.* 91, 51 *L. R. A.* 151, 81 *Am. St. Rep.* 368; *Jones v. Vance Shoe Co. (C. C. A.),* 115 *F.* 707; *Lucier v. Norfolk,* 99 *Conn.* 686, 122 *A.* 711; *Esselstyn v. Meyer & Chapman State Bank,* 63 *Mont.* 461, 208 *P.* 910; *Holtz v. Olds,* 84 *Or.* 567, 164 *P.* 583, 1184; *Note* to *Slade v. Lexington,* 32 *L. R. A.* (*N. S.*) 201; *Pomeroy, Spec. Per.,* § 178; *Note* to *Atwood v. Cobb,* 26 *Am. Dec.* 657; *Fogg v. Price,* 145 *Mass.* 513, 14 *N. E.* 741.

The contract before us then is, as was said in *Weegham v. Killefer, supra,* "nothing more than a contract to enter into a contract, in the future, if the parties can then agree to contract."

But, says the plaintiff, it was the duty of the defendant to name a reasonable license fee otherwise a portion of the right under the contract is left "useless and inexplicable." *Williston, Contr., supra.* In its brief the plaintiff also flatly says "the word 'reasonable' was just as clearly intended by the parties to govern the determination of the fee by the defendant as though it had actually been written into the contract." If this observation is true as regards the contract before us it would likewise be true with respect to any contract which is silent as to the price or amount to be paid, and there never would be any difficulty for the reason that the question would always be one of reasonableness for determination by the jury.

This argument assumes that there is a contract, whereas, in fact, there is no contract. Apparently the argument is based upon the proposition advanced in *Wood v. Lucy, Lady Duff-Gordon,* 222 *N. Y.* 88, 118 *N. E.* 214, "a promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." In this case the defendant contended that the contract was not binding as the plaintiff had not bound himself to do any-

thing, hence there was no mutuality. All the majority of the Court said was that the plaintiff impliedly promised to use all reasonable efforts to market the defendant's designs, therefore, the contract was not lacking in mutuality.

It is not intimated that *Varney v. Ditmars*, 217 *N. Y.* 223, 111 *N. E.* 822, 823, *Ann. Cas.* 1916*B*, 758, was overruled. In this case an employer agreed to pay to an employee, in addition to his salary, a "fair share of the profits." Action was brought for services rendered, and it was urged that the defendant, by the use of the word "fair," was as certain and definite as people are in the purchase and sale of a chattel where the price is not expressly agreed upon, but the Court said:

> "The question whether the words 'fair' and 'reasonable' have a definite and enforceable meaning when used in business transactions is dependent upon the intention of the parties in the use of such words and upon the subject-matter to which they refer. In cases of merchandising and in the purchase and sale of chattels the parties may use the words 'fair and reasonable value' as synonymous with 'market value.' A promise to pay the fair market value of goods may be inferred from what is expressly agreed by the parties. The fair, reasonable, or market value of goods can be shown by direct testimony of those competent to give such testimony. The competency to speak grows out of experience and knowledge. The testimony of such witnesses does not rest upon conjecture. The opinion of this court in *United Press v. New York Press Co.*, 164 *N. Y.* 406, 58 *N. E.* 527, 53 *L. R. A.* 288, was not intended to assert that a contract of sale is unenforceable, unless the price is expressly mentioned and determined. * * *
>
> "The contract in question, so far as it relates to a share of the defendant's profits, is not only uncertain, but it is necessarily affected by so many other facts that are in themselves indefinite and uncertain that the intention of the parties is pure conjecture. A fair share of the defendant's profits may be any amount from a nominal sum to a material part according to the particular views of the person whose guess is considered. Such an executory contract must rest for performance upon the honor and good faith of the parties making it. The courts cannot aid parties in such a case when they are unable or unwilling to agree upon the terms of their own proposed contract."

Nor does the *Wood Case* purport to overrule *United Press v. N. Y. Press Co.*, 164 *N. Y.* 406, 58 *N. E.* 527, 53 *L. R. A.* 288, *supra*, where the same Court held that a contract to take press reports for a term of years at not more

than $300 per week, without making any other provision as to price, was too indefinite to permit a recovery of anything more than nominal damages for a breach.

Nor does the case before us fall within that class of cases where the Courts seize upon the use of the word "reasonable," or a like expression, as indicative of a purpose and intention to leave the terms or price to the judgment of others, as in *Worthington v. Beeman (C. C. A.)*, 91 *F.* 232, 235, cited by the plaintiff, in which case it appeared that the defendant had agreed to renew the plaintiff's right to the exclusive sale of an article in a certain territory for a specified term in case the plaintiff succeeded in doing such a business as the defendant might "reasonably expect."

The Court said:

"The use of the word 'reasonable' indicates an intention that if a dispute on the point should arise it should be determined by a standard outside of the minds of the contracting parties, according to the judgment of a court and jury upon the facts and circumstances proved."

The Court was far from saying that it would read the word "reasonable" into the contract.

As we have said, the voice of the plaintiff's argument is that it assumes a completed contract, while, in fact, there is only an agreement to contract if the minds of the parties shall thereafter meet.

In *Pennsylvania Lubricating Co. v. Wilhelm*, 255 *Pa.* 390, 100 *A.* 93, there was a written contract for the sale of lubricating grease "subject to approval drawn from bulk." The defendant did not deliver, nor did it submit a sample. The plaintiff sued for damages. A demurrer was sustained. The Court after saying that the minds of the parties had not met on the quality of the grease, proceeded:

"If a contract be invalid because incomplete it is not made valid by the neglect or refusal of one party thereto to do that which would enable the other party at his option to render it complete."

See, also, *Wolf v. Lodge, et al.,* 159 *Iowa* 162, 140 *N. W.* 429; *Cauet v. Smith,* 86 *Misc.* 99, 149 *N. Y. S.* 101.

The plaintiff refers to other cases in support of its argument.

In *Jessup & Moore Paper Co. v. Bryant Paper Co.,* 283 *Pa.* 434, 129 *A.* 559, and *Jones Cotton Co. v. Snead,* 169 *Ala.* 566, 53 *So.* 988, the contracts themselves provided methods of price fixing in case of disagreement.

*Coyne v. Weaver,* 84 *N. Y.* 386, holds simply that where two different constructions of a contract are possible, the one is to be chosen which upholds and does not destroy the instrument.

*Fleischman v. Furgueson,* 223 *N. Y.* 235, 119 *N. E.* 400, and *Browne v. Paterson,* 165 *N. Y.* 460, 59 *N. E.* 296, are cases where the language of the contracts was susceptible of more than one construction. They are not in point here.

We find no authority for the proposition submitted by the plaintiff that a contract which fixes neither price nor measure of price, nevertheless will not be regarded as unenforceable, because the element reasonableness will be read into it. Courts and juries may not speculate or conjecture as to what is reasonable where the parties themselves have reached no agreement.

We are of the opinion that the contract before us is so uncertain in its terms, or, to be more exact in its total lack of terms with respect to additional license fees, as to render it unenforceable. By its terms the defendant was constituted the sole judge of the amount of the license fee. It is not suggested in the contract, by the use of the word "reasonable," or by any word or expression of similar meaning, that the defendant intended to permit any mind or opinion, other than its own, to fix the license fee for additional territory. This was the contract which the plaintiff accepted, and, if it is not as advantageous as the plain-

tiff conceived it to be, it is beyond our power to make it measure up to its conception.

If it is to be left to a jury to determine a reasonable license fee for the additional territory proportioned to the license fee for the original territory, what factors shall govern, area, population, wealth, economic conditions prevailing in the several states, or what? Any determination reached would be based on conjecture and speculation. *Varney v. Ditmars, supra.*

No matter how a contract may be regarded from an ethical standard, and however Courts may strive to establish their enforceability, there is a limit at which they must stop. Courts sometimes wander far afield to supply the element of certainty where there is some fact or circumstance, use of word or phrase, custom, or prior dealings between the parties which may be seized upon to relieve the difficulty; but where it is clear, as here, that the parties have not contracted, but have only suggested the possibility of a future contract, Courts may not twist an expression of conditional willingness to agree into an actual, enforceable contract.

The demurrer to the second and third counts must be sustained.