99 A.2d 396 (1953)
VALE
v.
ATLANTIC COAST & INLAND CORP. et al.
Civ. No. 50.
Court of Chancery of Delaware.
September 18, 1953.
*397 Daniel J. Layton, Sr., Georgetown, and John W. Dickerson, Philadelphia, Pa., for plaintiff.
James M. Tunnell, Sr., of Tunnell & Tunnell, Georgetown, for defendants.
SEITZ, Chancellor.
The complaint seeks, alternatively, the specific performance of an agreement to give an option or the appointment of a liquidating receiver. This is the decision on the individual defendant's motion to dismiss and the plaintiff's motions for judgment on the pleadings or summary judgment.
Plaintiff, Ruby R. Vale, owns 250 shares of the stock of the defendant, Atlantic Coast and Inland Corporation. The other outstanding 250 shares were owned by the individual defendant, William P. Short. Defendant, Short, died after the commencement of this action and his administrator has been substituted. However, reference to the "defendant" or to "Short" will embrace only the deceased unless otherwise indicated.
Defendant, Short, filed a motion to strike various parts of the amended complaint. A review of that motion discloses that in effect defendant has moved to strike the entire complaint. While some of the matters may be said to be properly the subject matter of a motion to strike, it was agreed at the oral argument that the motion should be treated as a motion to dismiss for failure to state a claim. I shall so treat it.
Plaintiff has filed a motion for judgment on the pleadings for the reasons that "the defendant by his motion to strike admits the truth of the averments of the complaint and, in any event, is estopped from making denial of the facts". Plaintiff also has filed a motion for summary judgment on the ground that he is entitled to judgment as a matter of law. In disposing of the various motions it first becomes necessary to set forth the pertinent allegations of the complaint.
The defendant corporation was formed to carry on a joint venture by plaintiff and defendant. At the time they incorporated the joint venture they agreed that neither, without the consent in writing of the other, would either sell or pledge his stock. They further agreed that neither would place of record any of the judgment notes payable to either and evidencing debts of the corporate defendant to them and that neither would, as an officer, carry on any negotiations for the sale or exchange of the land owned by the corporate defendant without notice to the other.
Prior to December 1947 defendant told plaintiff he was negotiating with the State of Delaware for the exchange of lands between the State and the corporate defendant. To aid this exchange defendant requested that the corporation execute separate deeds to each of them for the three parcels of land to be exchanged. Plaintiff agreed. While it is not clear, I assume the deeds were for different parcels. On December 22, 1947 two separate deeds were prepared for two of the parcels of land *398 mentioned and were delivered to the defendant, Short. These deeds were acknowledged but not notarized. It was agreed between plaintiff and defendant that they were not to be recorded until, and only if, the exchange of lands between the State and the corporate defendant had been mutually agreed upon plus certain other conditions. It was further agreed that both deeds were to be of no effect if the State should refuse to make the exchange.
During the period the defendant was negotiating the exchange, work on the three parcels of land was taking place under his supervision and payment therefor, both before and after the date the State refused to make any exchange, was made by the corporation with money loaned to the corporation by the plaintiff and defendant in return for judgment notes.
By letter dated January 19, 1948 defendant advised the plaintiff that the State refused to make the exchange.
In the fall of 1949 plaintiff first obtained information which caused him to believe that the defendant had made wrongful use of the deeds. He thereafter ascertained that the deed from the defendant corporation to the defendant, Short, had been recorded in violation of the agreement. It further appeared that the defendant, Short, had in turn conveyed certain of such property to other persons. Much later plaintiff found his deed for certain of the corporate properties in his own safe, although he appears to take the position that he is without knowledge as to how it got there.
By letter dated July 12, 1950 plaintiff called defendant's attention to his wrongful recording of the deed and suggested a restoration of the status before defendant's wrongful act. He suggested that the joint venture should be ended and a formal settlement stipulation agreed upon. In this letter plaintiff stated that the matters set forth in the letter must stand as accurate until defendant pointed out any error therein. After some negotiation defendant assured plaintiff he would give a written answer to his requests of July 12, 1950 for an amicable adjustment. Plaintiff never received any confirmation, denial or modification of the facts therein stated.
Plaintiff and defendant met on October 14, 1950 and at that time plaintiff accepted defendant's offer to settle all of their outstanding differences. Under the agreement defendant gave plaintiff an option either to buy or sell the 250 shares of stock which defendant and plaintiff each respectively owned "for one-half (½) of the gross sum of $200,000.00, less the legal indebtedness of said defendant corporation". The terms and conditions under which the option was to be consummated were "in detail to be set forth in a written agreement (herein after called `proposed written agreement') to be prepared by plaintiff and forwarded to defendant, Short, and his counsel for modification by them, if any".
Defendant's counsel was notified by telephone of the said agreement of option and by letter dated October 19, 1950 plaintiff forwarded a rough draft of the terms and conditions of the proposed written agreement under which the option would be consummated. Plaintiff's transmittal letter advised defendant and his counsel that plaintiff was willing to accede "to any modification that may be made by your counsel and mine in order fairly and equitably and with certainty to bring about the sale of the stock of either of us to the other for the price by you named".
Defendant refused either to accept or modify the rough draft or to give to plaintiff any agreement to buy or sell. Plaintiff tenders performance of his obligations under the terms of the alleged agreement of amicable settlement or under such terms as the court may order for the consummation by way of specific performance of defendant's promise to give such option.
Later a proposed amicable partition was suggested by defendant in lieu of the option agreement. After protracted negotiations thereunder the matter was not consummated because of defendant's wrongful *399 actions with the consequence that the option agreement is still in force.
Plaintiff now seeks specific performance of the agreement to give an option. Plaintiff asks for specific performance because the shares are not listed on any public exchange, have no known value or public demand in sale and are equally owned by plaintiff and defendant.
I first consider defendant's motion to dismiss the complaint in so far as plaintiff seeks specific performance of the so-called agreement to give an option. Defendant contends that it fails to state a claim for the following reasons:
1. The agreement was without consideration.
2. The agreement is too indefinite in its terms to be enforceable.
3. There was to be no binding agreement until it was reduced to writing.
4. There was no meeting of the minds.
I shall consider defendant's objections in order.
Defendant first says the alleged agreement is without consideration. Assuming without deciding that the complaint must set forth specific allegations concerning consideration, I think it apparent that legally sufficient consideration is alleged, viz., mutual promises "to settle all of their outstanding differences" by the option agreement.
Defendant next contends that the agreement is so indefinite in its terms as to be legally insufficient. Defendant says that the complaint shows that many of the material terms were not agreed upon and so no legally enforceable agreement was ever made. Plaintiff points out that the parties, according to the complaint, agreed on the basic terms and only the details were left for future agreement. Under these circumstances plaintiff contends that the court will enforce an agreement to give an option.
It is well recognized that parties may make an agreement to make a contract and that such an agreement will be enforced if the agreement specifies all of the material and essential terms including those to be incorporated in the future contract. Raisler Sprinkler Co. v. Automatic Sprinkler Co., 6 W.W.Harr. 57, 36 Del. 57, 171 A. 214; see 12 Am.Jur., Contracts § 24; 1 Williston on Contracts (Rev.Ed.) § 45. Defendant argues that the alleged agreement fails to contain many of the material terms which must appear in the option agreement to be executed. Defendant says that plaintiff's own exhibit setting forth his proposed draft of the option agreement amply demonstrates this fact. In resolving this question at this stage, all reasonable inferences most favorable to plaintiff must be drawn. The complaint states that defendant agreed to give plaintiff an option under which plaintiff could either buy defendant's stock or sell his stock to defendant for one half of $200,000 less the corporate indebtedness. Such things as the time when the option agreement was to be executed and the time within which it could be exercised do not appear. However, I believe that at the pleading stage this court cannot hold as a matter of law that they are so essential that the agreement is unenforceable. At times the court will imply performance within a reasonable time. Compare Tull v. Smith, 29 Del.Ch. 347, 50 A.2d 908; 1 Williston on Contracts (Rev.Ed.) § 38. What the circumstances may dictate when fully developed I can not now say. The importance, if any, of the absence of a provision fixing the place of performance must also await a hearing. Tull v. Smith, supra.
Defendant next argues that there was to be no binding agreement until it was reduced to writing. Whether that was the case is a question of fact which cannot be resolved on a motion to dismiss where an agreement is alleged. The determination of that issue must await the unfolding of the evidence. Compare Universal Products Co. v. Emerson, 6 W.W.Harr. 553, 179 A. 387, 100 A.L.R. 956.
*400 Finally defendant contends that there was no meeting of the minds and thus no agreement. This argument of defendant's is premised upon an analysis of and inferences drawn from various allegations of the complaint and exhibits attached thereto. At this pleading stage the court must accept the inference which favors the sufficiency of the complaint. So viewed it is enough to say that the complaint is sufficient because the complaint alleges an agreement. Defendant's argument will be more appropriate after the full factual picture is unveiled.
It follows from the foregoing that defendant's motion to dismiss the complaint in so far as plaintiff seeks specific performance of an agreement to give an option must be denied.
Defendant also seeks to dismiss the complaint is so far as it requests alternative relief in the form of a liquidating receiver. It is noteworthy that plaintiff does not allege insolvency. Therefore, in order to state a claim for the appointment of a receiver for a solvent corporation, plaintiff must show fraud, gross mismanagement or extreme circumstances causing imminent danger of great loss which cannot be otherwise prevented. Compare Drob v. National Memorial Park, 28 Del.Ch. 254, 41 A.2d 589. Let us consider the allegations in the light of this rule.
In support of his prayer for a liquidating receiver plaintiff alleges that defendant breached his agreement with plaintiff that neither would have dealings with third parties relating to the land in question without the knowledge of the other. Defendant violated the agreement that during the consummation of the option there would be no change in the rights and obligations of either party to the other or to the corporation. This violation consisted of defendant's withdrawing $2,200 from the corporate treasury without plaintiff's authorization. Defendant breached his agreement when, without plaintiff's knowledge, defendant made arrangements to cultivate a large acreage already under lease.
The lands of the joint venture are neglected, the buildings are unoccupied and the property and assets of the joint venture are decreasing in value and being wasted.
Plaintiff alleges that the corporation was used merely as a convenience to them for the purpose of carrying out their joint venture and that each owns one half of the stock. Plaintiff further alleges that the differences are so irreconcilable as to prevent the profitable operation of the business and that they, along with defendant's wrongful acts, will result in great and irreparable harm to plaintiff and the joint venture.
While the court will exercise its power to appoint a receiver for a solvent corporation with great restraint, I think that the allegations are sufficient to withstand a motion to dismiss. The combination of circumstances alleged could form the basis for the introduction of evidence of a character which would warrant the appointment of a liquidating receiver. Consequently the motion to dismiss must be denied.
I now consider plaintiff's motion for judgment on the pleadings. Rule 12(c) of the Court of Chancery governing such motions requires that the pleadings be "closed" before such a motion is filed. The pleadings have not yet been "closed" within the meaning of that rule. It follows that the motion must be denied because it was prematurely filed.
Finally, I consider plaintiff's motion for summary judgment. The disposition of this motion is rendered most difficult because all counsel have seen fit to treat the requirements of the rules of court in a rather cavalier fashion. Defendant did not file affidavits in opposition to plaintiff's motion for summary judgment. Yet at the argument defendant consistently challenged plaintiff's factual allegations and plaintiff made no objection to this procedure, although the court did. To avoid further delay, in a matter already too long delayed, the court heard the argument as though the matter denied by defendant appeared in affidavit form. If plaintiff desires he may apply for an order requiring defendant to file appropriate affidavits. However, *401 in view of my decision he may prefer to accept defendant's answer in lieu thereof. I might say that this entire procedure not only had plaintiff's tacit consent but, he joined with defendant's counsel in making statements which can not be found in any papers on file.
The court realizes that its indulgence here may be open to justifiable criticism but it feels that this is the only practical way to cut the Gordian knot and get on with the law suit. At the risk of incurring a charge of self-pity, I paraphrase the plaint of another honorable calling that on occasion "a trial judge's lot is not a happy one" (The Pirates of Penzance, Act II).
In disposing of plaintiff's motion for summary judgment, I therefore take notice of the fact that either in his so-called motion to strike or in his oral argument defendant's counsel denied the material allegations of the complaint. More explicitly he denied that there was any agreement of option and he denied the material allegations relied upon by plaintiff as the basis for the appointment of a liquidating receiver. It is apparent therefore that in the normal case, there being a dispute as to material questions of fact, plaintiff's motion would be denied without more. But plaintiff insists that he is entitled to judgment because he contends that defendant is estopped as a matter of law to deny the existence of the agreement to give an option. Plaintiff says this estoppel arises because defendant was a fiduciary  being in active control of the joint venture  and as such remained silent when he was under a duty to deny the statements appearing in certain letters sent to defendant by plaintiff.
Plaintiff says defendant, by nature of his position in the joint venture, was under a duty when he received letters from plaintiff setting forth certain facts and agreements to speak out if he disagreed with them. Plaintiff claims that in reliance on defendant's silence he delayed enforcing his rights and that therefore defendant will not now be heard to repudiate the agreement.
Is plaintiff entitled to summary judgment based on estoppel? Defendant vehemently denies the very basis upon which plaintiff predicates his estoppel. Thus defendant denies that he was under any affirmative duty to speak. He denies that there was any agreement to give an option. In fact he denies most of the allegations of the complaint. In my opinion this court is not entitled to say as a matter of law, at the present stage of this case, that defendant is estopped to deny the existence of the alleged agreement. The testimony might develop facts from which an estoppel would be inferred but that is a far cry from reaching such a conclusion on the present pleadings. Certainly defendant is entitled to show, if he can, that the alleged facts relied upon to create an estoppel are not true. The same situation applies with respect to the claim for alternative relief in the form of a liquidating receiver.
It follows from what I have said that plaintiff is not entitled to summary judgment and his motion therefor will be denied.
Order on notice.