ROBERT E. MONAGHAN, Landlord, *v.* JOSEPH KANE, Tenant.

County Court, Erie County, January 25, 1946.

*Francis J. Riordan* for landlord.

*Edmond J. Shea* for tenant.

WARD, J. This is a summary proceeding to recover the possession of certain real property located in the city of Lackawanna, in this county.

The verified petition of the landlord contains the usual allegations, describing the premises, the interest therein of the petitioner; stating the necessary facts which authorize the application by the petitioner and the removal of the tenant in possession, in that the tenant holds over and continues in possession after the expiration of his term without the permission of the landlord, and also that the tenant has defaulted in the payment of rent, and praying for a final order to remove the tenant and for judgment in the sum of $57.50, with costs.

The precept was duly personally served and contained the notice provided for in section 1418 of the Civil Practice Act.

The attorney for the tenant appeared in court on the return day of the precept, and after allowing the landlord's attorney to argue fully in favor of the petition, he stated orally that he " appeared specially " to attack the jurisdiction of the court, in that the notice to terminate the tenancy was not unequivocal and not personally served. No mention was made by the tenant's attorney as to whether he referred to jurisdiction over the tenant's person, or this particular real property, or both.

Where the precept is served personally, the county judge or special county judge of the county in which the real property is situated has jurisdiction over the person of the tenant and the subject matter of the proceeding, namely, the real property from which the tenant is to be removed. (Civ. Prac. Act, §§ 1413, 1421.)

In this case, the tenant has not moved to set aside the service of the precept, nor does he deny proper and due service of it; therefore, jurisdiction cannot be questioned.

No action can be taken on a special appearance that is not based upon a challenge to the jurisdiction of the court over the person or property of the defendant. (*Muslusky* v. *Lehigh Valley Coal Co.*, 225 N. Y. 584, 588.) Generally, when a defendant becomes an actor in a suit to the extent of participating in the merits, he submits to the jurisdiction of the court; this is largely a matter of degree and depends necessarily upon the facts. (*Henderson* v. *Henderson*, 247 N. Y. 428, 432.) In the *Henderson* case (247 N. Y. 428, 434, *supra*) Judge POUND, concurring, said: " A voluntary general appearance by the attorney for a defendant on the trial or hearing is the equivalent of the service of a notice of appearance under Civil Practice Act, section 237. ' He thereby submits himself to the jurisdiction of the court, and no disclaimer which he may make upon the record, that he does not intend to do so, [*i.e.*, appear generally] will be effectual to defeat the consequences of his act.' " Where a party makes a motion addressed to the subject matter of the complaint, he becomes an actor in the suit on the merits and is held to have appeared generally. (*Montgomery* v. *East Ridgelawn Cemetery*, 182 Misc. 562.)

Here, the attorney for the tenant became an actor upon the merits, by questioning the sufficiency of certain material allegations of the petition which state that by the timely service of a notice to terminate the tenancy, the term expired and the alleged tenant is a holdover. It follows that the tenant has appeared generally through his attorney.

It is conceded by everyone that sections 228 and 232-a of the Real Property Law do not apply to this case, and that they differ conspicuously from section 232-b of that Law which does apply.

Section 232-b of the Real Property Law entitled, " Notification to terminate monthly tenancy or tenancy from month to month outside the city of New York ", provides: " A monthly tenancy or tenancy from month to month of any lands or buildings located outside of the city of New York may be terminated

by the landlord or the tenant upon his notifying the other at least one month before the expiration of the term of his election to terminate; provided, however, that no notification shall be necessary to terminate a tenancy for a definite term.'' (Added by L. 1942, ch. 813, eff. Sept. 1, 1942.)

This section does not limit the manner of giving notice to terminate a month-to-month tenancy. The service of such a notice, obviously, does not commence a court action or proceeding. The true test of the sufficiency of such notice is: Has the landlord or the tenant *notified* the other at least one month before the expiration of the term of his election to terminate. The evidence that establishes such notification could be any logically probative evidence. It has been held under section 232-b that the sliding of a written notice terminating the tenancy under the tenant's door by the landlord is sufficient when the receipt thereof is not denied. (*Angell* v. *McInerney*, 182 Misc. 42.)

In this case, the notice of termination consisted, essentially, of two paragraphs: '' Because of the return of my husband Robert E. Monaghan from active overseas service in the United States Marine Corps, we wish to reoccupy our home at 54 South Shore Boulevard, Lackawanna, N. Y., which we have owned since 1940.

'' Therefore please accept this notice to vacate said premises on or by November 20, 1945, the end of your rental month, which runs from October 20, 1945, to November 20, 1945, or if you prefer you may extend this notice to vacate from November 20, 1945, to December 1, 1945.''

This notice is clear, unequivocal and final. The election was made by the landlord to terminate definitely the tenancy.

At an adjourned date the attorneys for the respective parties reconvened before this court, at which time the motion to dismiss the petition for lack of jurisdiction was denied, and leave was granted to the tenant to interpose its amended answer, and a receipt dated November 20, 1945, was received in evidence as the tenant's Exhibit A.

The amended answer admits that the '' petitioner is the co-owner, together with petitioner's wife, Margaret Monaghan, of the described premises,'' but denies that the petitioner is landlord of the tenant; admits that on March 20, 1943, the tenant leased said premises from said Margaret Monaghan, but denies it was for a month-to-month, indefinite term; alleges as a first defense and '' counterclaim '' that on November 20, 1945, the tenant paid $19 rent for the premises to Margaret Monaghan,

a co-owner, " for the period from November 20th, 1945, to and including December 1st, 1945, and received in turn a written receipt signed by said Margaret Monaghan." The amended answer also alleges payment of rent for December, 1945, and January, 1946, and the improper service and form of the notice terminating the tenancy.

The tenant's Exhibit A supports the payment by the tenant to Margaret Monaghan of $19 as rent for " November 20, 1945 to December 1, 1945."

The tenant's affidavits show that on December 19, 1945, a " New York Draft " for $57 was " made out to the order of Robert E. Monaghan and Margaret M. Monaghan " and mailed in an envelope and with a letter, both addressed to " Mr. and Mrs. Robert Monaghan, 42 Zittel Street, Buffalo, N.Y." as rent for December, 1945; that on January 5, 1946, a " check " for $58 was " made out to the order of Margaret E. Monaghan " and mailed in an envelope and with a letter, both addressed to " Mrs. Margaret E. Monaghan, 42 Zittel Street, Buffalo, N. Y." as rent for January, 1946; that said draft and check were not returned to the tenant.

In this case, the payment and receipt of $19 as rent for the definite term from November 20, 1945, to December 1, 1945, created a tenancy for a definite term within the meaning of section 232-b of the Real Property Law. Therefore, no notification was necessary thereafter to terminate the tenancy which ended, by agreement between the parties, on December 1, 1945.

The holdover after December 1, 1945, by the alleged " tenant " resulted in a landowner-trespasser relationship. The " tenant " contends that the mailing of the " draft " for $57 on December 19, 1945, and of the " check " for $58 on January 5, 1946, changed this relationship to one of landlord and tenant. It is admitted that the true monthly rent was $57.50, and that the " draft " contained an error and the " check " was an attempt to correct the error in amounts.

Section 322 of the Negotiable Instruments Law does not impose a duty upon the landlord in this case to accept the " draft " and " check ", nor can the landlord be deemed to have done so. The " draft " was improper in amount, was nineteen days late and was mailed after a former summary proceeding to dispossess from the same premises this tenant by this landlord in another court was commenced. Likewise, the " check " was five days late and was mailed one day *after* this very summary proceeding was commenced in this court. No such abortive attempts to pay alleged rent without some

act of acceptance by the alleged landlord can blossom into a tenancy of any kind under the facts here.

In *Nay* v. *Curley* (113 N. Y. 575) an action was brought to recover the amount of an alleged loan made by plaintiffs' intestate to defendant. " The plaintiffs proved that the check was delivered by their intestate to the defendant, the payee, on the day of its date. (Dec. 22, 1886); its indorsement by the latter; that it was paid in due course, and that the defendant received the proceeds. Up to this point no cause of action had been established." (ANDREWS, J., p. 577.) This was based upon the general rule, that in the absence of explanation, the presumption arises from the delivery of a check that it was delivered in payment of a debt, and not a loan.

In the case at bar, the mailing of checks without a voluntary acceptance creates no presumption of the payment of rent sufficient to create a tenancy in real property where none existed at the time of such mailing.

There is no defense to this proceeding sufficient to bar it. It follows that a final order should be granted.

Prepare and submit a final order accordingly, with costs.

refused by the Division of Placement and Unemployment Insurance by letter dated June 5, 1945. This claim was filed Octo ber 10, 1945.

A motion has been made by the Attorney-General to dismiss this claim. The motion must be granted for the reasons stated in our opinion in the claim of *Guaranty Trust Co. of N. Y.* v. *State of New York* (186 Misc. 676) decided this date.