WAGNER BUILDING, INC., Landlord, *v.* UNITED CIGAR-WHELAN STORES CORP., Tenant. WAGNER BUILDING, INC., Landlord, *v.* PARKFIELD SHOPS, INC., Tenant.

Municipal Court of the City of New York, Borough of The Bronx, November 17, 1952.

*Thomas Tozzi* and *Abraham Yasgour* for landlord.

*Richard J. Roche* for United Cigar-Whelan Stores Corporation, tenant.

*George Jacobs* for Parkfield Shops, Inc., tenant.

BENNETT, J. The above-entitled proceedings were instituted by the landlord of two adjoining stores to recover possession thereof in accordance with the provisions of subdivision (k) of section 8 of the Business Rent Law of New York as amended by chapter 417 of the Laws of 1952. By agreement of the parties both cases were tried together with the understanding that separate final orders would be entered.

The United Cigar-Whelan Stores Corporation, hereinafter referred to as " United ", and Parkfield Shops, Inc., hereinafter referred to as " Parkfield " are statutory tenants, respectively, of two adjoining stores. The landlord and Loft Candy Corporation, hereinafter referred to as " Loft ", have executed a lease whereby the said landlord let unto the said " Loft " the two stores occupied by the tenants herein, for a term of at least ten years, at a rental of $22,000 per annum for the first five years and $24,000 per annum for the second five years, noncancelable except for failure to secure possession in accordance with the aforesaid statute.

The tenants resist the landlord's right to maintain these proceedings on two grounds (1) it is claimed that the landlord has accepted rent for the month of October, 1952, from the alleged holdover tenants, prior to the commencement of these proceedings, and (2) that the lease with " Loft " does not come within the exception provided by subdivision (k) of section 8, as amended, in that it may possibly result in the letting of only one store and further that it may be a letting for less than ten years.

There is no doubt as to the inability of the landlord to maintain these proceedings if the rent for October, 1952, the " holdover month ", had been collected by it. (*Empire State* v. *Graceline Handbags,* 192 Misc. 679.)

The landlord seeks to make a distinction between a case where a tenant remits a check in payment of rent and the same is cashed or otherwise negotiated by the recipient landlord and an instance, such as in the cases at bar, where the landlord only retains the check, does nothing further with respect thereto and produces the same in its original form at the trial. To maintain this contention, that the mere retention of the check does not constitute acceptance thereof as payment, the landlord relies on the case of

*Burns* v. *Wallace* (191 Misc. 451). This decision cannot be accepted as authority to be adopted in view of the more recent decision of the Appellate Term of this department in the case of *Hammon* v. *Claxton* (110 N. Y. S. 2d 138) and the case of *Matter of Walker* v. *Ribotsky* (275 App. Div. 112).

It therefore becomes a matter of paramount importance to ascertain in fact when these summary proceedings were commenced. If the proceedings actually had been commenced prior to the receipt of the respective checks then the landlord thereafter could retain or negotiate the same without in any respect impairing its right to maintain the said proceedings. (Civ. Prac. Act, § 1410, subd. 8; *Leonis* v. *Ambrosino,* 188 Misc. 820.)

It is undisputed that the petitions herein were filed on October 2, 1952, that the precepts were issued thereon on the same day and that the same were served on the respective tenants in possession on October 3, 1952.

In the city of New York, summary proceedings are instituted by an application (petition) to the Municipal Court of said city whereupon a precept is issued out of the said court directed to the person or persons designated in the petition as being in possession of the property requiring him or them forthwith to remove from the property *or* show cause why the possession of the property should not be delivered to the owner or landlord. (Civ. Prac. Act, §§ 1413, 1418.)

In the foregoing respect there is a difference between the " commencement " of an action and the " commencement " of a summary proceeding. Walsh, in his Encyclopedia of New York Law (§ 1791), writes as follows: " Civil actions are always started by the service of a summons, and these are the usual forms in which legal rights are enforced or wrongs prevented. Special proceedings are exceptional and are not started by service of a summons, but usually by a petition ".

It seems further from the wording of the decisions in the cases of *Geisler* v. *Hirsch* (156 N. Y. S. 670), *Rainer Co.* v. *Smith* (65 Misc. 560), and *Handshke* v. *Loysen* (203 App. Div. 21) that it has been the long-established practice to accept the filing of the petition and the issuance of the precept as the actual time of " commencement " of a summary proceeding rather than the time of service thereof. This theory is further evidenced by the concurring opinion of Mr. Justice VAN VOORHIS in the case of *Matter of Walker* v. *Ribotsky* (275 App. Div. 112, *supra*).

In the " Parkfield " case there was some testimony that the check was made out to the landlord on September 30, 1952, but there was no proof that the same was actually mailed on that day. (*Gardam & Son* v. *Batterson*, 198 N. Y. 175; *Cashman, Inc.*, v. *Spellman*, 233 App. Div. 45; *Brown* v. *Provident Loan Soc.*, 282 N. Y. 453.) In the " United " case there was testimony that the check was mailed on October 1, 1952. Both the addresser and the addressee being in the city of New York, there is a presumption of law that the check was received on October 2, 1952, the same day on which the petition herein was filed and the precept issued.

In the absence of any proof to the contrary, there is a presumption of regularity and we may not assume that the delivery of the check by mail actually preceded the filing of the petition and issuance of the precept. The court therefore concludes that the proceedings had been " commenced " prior to the receipt of the checks.

The second defense, hereinbefore mentioned, presents no difficulty to determination. There is in existence a lease, duly executed, between the landlord herein and " Loft " for a term of at least ten years, for both of the said adjoining stores, noncancelable except as provided by statute.

The provision in the said lease that should the landlord secure possession only of one store, the tenant " Loft " shall be required to take possession thereof and pay therefor at the rate of rent presently paid by the tenant in possession until such time as the landlord shall be able to give possession to " Loft " of both stores, may only be considered on the question of " good faith " of the parties. The present occupants contend that should the landlord only succeed in securing possession of one of the said stores, which " Loft " would be required to take at the current rent, and should the landlord decide not to exercise its right to cancel the lease for failure to give possession of the remaining store, it would result in the perpetration of a fraud on the present occupant who would be deprived of its right to " match " a lease for a single store.

Perhaps there would be some weight to such argument were it not for the fact that the landlord offered at the trial to make arrangements so that either of the present occupants could remain in its premises at the current rent until such time as both stores would be available for possession by " Loft ". The landlord contended that the insertion of this provision in the lease was to assure it against loss of income from either store

during any period ensuing between the time when both would become available. This offer was rejected by the tenants.

The further contention that the alleged agreement is in fact only a contract to enter into a future lease is likewise not sustained by the proof. The lease between the landlord and " Loft " is a valid subsisting lease, executed on September 10, 1952, and both parties could be held liable for breach of the terms thereof.

Some question has been raised about the term of the lease in that the same is not in fact for a period of ten years " to commence on October 1, 1952 and expiring on September 30, 1962 (or on a later date as in the lease provided)". The reason for the insertion of the words set forth in parenthesis is evident on reading the second paragraph of clause 36 of the lease, which is as follows: " The term of the lease shall run for a period of ten years commencing from the date of delivery of possession of both of said stores to the tenant herein."

It is obvious that the parties intended that there would be a letting and hiring of both stores jointly for a term of *at least* ten years from the date of possession thereof regardless of the period " Loft " would be in possession of either single store. Such a provision would not shorten the term to less than ten years but rather lengthen the same, if necessary, according to prevailing circumstances.

The court is of the opinion that the landlord has established a case on the law and on the evidence and grants it final orders against each tenant, respectively. Stay in each case to January 15, 1953.