Angelo Mauceri, J.
This is an action by the landlord for possession of the premises based upon a termination of a lease.
The respondent operates a gasoline station in the Town of Huntington, State of New York, pursuant to an annual lease with the petitioner. He also has a retail dealer’s contract to sell the petitioner’s products. The respondent has had this *600 lease with the petitioner for the past 19 years and, on each occasion, the lease has been renewed. The end of the last term of the lease was February 28, 1971, and after having been renewed for the past .19 years, he received, pursuant to the terms of the lease, a 90-day notice terminating his lease. The respondent still remains in possession.
The petitioner seeks possession of the premises based on the termination of the lease, plus reasonable rent for use and occupancy of the premises by the respondent for the months of March and April of 1971.
The respondent’s contentions are that the lease was renewed after a demand for rent was made by the petitioner’s agent and the rent was sent to the petitioner’s agent. Respondent claims that payment of the rent would terminate this action. He further asks for, by way of a counterclaim, equitable relief in that the petitioner, without just cause, seeks to terminate this tenancy after 19 years without any consideration for the good will developed by the respondent while operating the service station.
The court finds, after trial, as a matter of fact and law, the following: On March 16,1971, the respondent received a “ Three Day Notice to Pay or Quit the Premises ” pursuant to subdivision 2 of section 711 of the Real Property Actions and Proceedings Law, although this was unnecessary for this proceeding. On March 17, 1971, respondent sent a banker’s check for $1,000 which was the minimum rental stated in the notice to pay. It was sent payable to ‘ ‘ Rudden and Robert, agents for the Mobil Oil Corporation ’ ’. This check was mailed to Rudden and Robert. On March 20,1971, respondent was served with this notice of petition and the petition in this action. Petitioner’s attorney held the rental check for a week and then returned it to the respondent who, in turn, returned it to the petitioner. The check was never cashed by the petitioner. At the trial, the petitioner submitted the check as Exhibit No. 4 in its original form and a facsimile was made at the direction of the court.
The landlord who has received a check for rent from a holdover tenant and has not cashed the check, will not be held to have manifested consent to the continuation of the tenancy. (Burns v. Wallace, 191 Misc. 451, Monaghan v. Kane, 186 Misc. 698 ; 45 ALR 2d 827, 839.) However, later cases have adopted the view that retention of a tenant’s check for payment would be deemed an acceptance and, thereby, create a tenancy from month to month (Matter of Walker v. Ribotsky, 275 App. Div. 112 ; 220 West 42 Assoc. v. Cohen, 60 Misc 2d 983 ; Wagner Bldg. *601 v. United Cigar-Whelan Stores Corp., 203 Misc. 382 ; (court did not follow Burns v. Wallace, supra) ; Hamann v. Claxton, 110 N. Y. S. 2d 138, see also Sowalsky v. Mac Donald Stamp Co., 31 A D 2d 582). Payment of rent to someone not authorized to accept it is not proper payment (Patrikaris v. Cavadas, 81 N.Y. S. 2d 483, affd. 83 N. Y. S. 2d 385).
The petitioner claims that Rudden and Robert were not the agents and could not have cashed the check, and therefore, were not the proper parties to receive the rental check. This court finds that petitioner’s Exhibit No. 3 “ Three Day Notice to Pay or Quit the Premises ’ ’ is signed by Mobil Oil Corporation as landlord, Rudden and Robert as agents. The respondent was given to believe that Rudden and Robert were the agents of Mobil Oil Corporation and could accept payment of the rent. The language of the notice to pay was a demand, the tenant mailed it to the persons who demanded payment, and the style which petitioner’s attorneys listed on the demand was Rudden and Robert, agents, Mobil Oil Corporation. At this point, the court concurs with the later cases such as Walter v. Bibotsky (supra), that at least a month-to-month tenancy existed by the holding of the rental check.
This is not the end of this particular matter. The lease provides that it shall terminate at the end of any current period (original or renewal) by notice from either party to the other given not less than 90 days prior to such termination. There was testimony that the respondent was personally advised by a sales representative of the petitioner’s intentions not to renew the lease, a day or two before November 30, 1970 and that written notice would be forthcoming.
The lease states that all notices shall be in writing and shall be either (1) delivered personally or (2) sent by registered or certified mail, and that notice by mail shall be deemed given on the date such notice is deposited. The court finds that oral notice to terminate was not given to respondent; and even if oral notice was given, it was not given according to the provisions of the lease.
A registered letter, dated November 30, 1970, was allegedly mailed to respondent on November 30, 1970.
To compute the 90-day period, the first day is excluded and the last day is included (General Construction Law, § 20). Ninety days from November 30, 1970 falls on February 28, 1971, the termination date of the lease. The court finds that the registered letter was not mailed on November 30, 1970 and therefore was untimely. The return receipt requested was not introduced *602 into evidence and respondent has testified that he received the letter around December 5, 1970. Petitioner has not sustained its burden of proof concerning the timely mailing of notice to terminate. The notice, being late, was ineffective and therefore could not terminate the lease.
The court further refers to section 5-905 of the General Obligations Law:
“ Certain provisions of leases to be inoperative unless express notice thereof is given to tenant. No provision of a lease of any real property or premises which states that the term thereof shall be deemed renewed for a specified additional period of time unless the tenant gives notice to the lessor of his intention to quit the premises at the expiration of such term shall be operative unless the lessor, at least fifteen days and not more than thirty days previous to the time specified for the furnishing of such notice to him, shall give to the tenant written notice, served personally or by registered or certified mail, calling the attention of the tenant to the existence of such provision in the lease.”
Petitioner’s Exhibit No. 1, the lease in this action, clause two, carries a renewal clause and there is no testimony or proof in the trial of this matter that the lessor did comply with the General Obligations Law and the case law (J. H. Holding Co. v. Wooten, 291 N. Y. 427 ; 1 Rasch, Landlord & Tenant, § 224). The respondent, without proper notice by the petitioner, has the sole option of deciding whether or not to renew and he need not do anything but continue in possession. The landlord places himself in the position, when he does not give notice under this section, of abiding by the tenant’s choice of what he wishes to do. This tenant was not given timely notice of the termination of the lease either by oral or written means. Further, he was not given notice pursuant to the General Obligations Law; and by his act of tendering the rental, he has indicated his desire to renew the lease on the terms listed on the three-day notice to pay or quit the premises. The court finds on the basis of foregoing that the lease has been properly renewed by the respondent and that he is in possession of the premises legally and, further, the petitioner is entitled to the rental for March and April of 1971 under the terms of the lease.
With regard to the counterclaim asking for equitable relief, the court must say at the outset “ Every man is presumed to be capable of managing his own affairs, and whether his bargains are wise or unwise, is not ordinarily a legitimate subject of inquiry in a court of either legal or equitable jurisdiction”. *603 (Parmelee v. Cameron, 41 N. Y. 392, 395.) Where a contract gives either party thereto the absolute unqualified right to terminate upon notice, the court need not look to the reason behind the notice to terminate (Brown v. Retsof Min. Co., 127 App. Div. 368). In Sinkoff Beverage Co. v. Schlitz Brewing Co. (51 Misc 2d 446), the court determined the question of unreasonable termination in a contract. It held that it must view the situation as of the time when the contract was entered into, and from that viewpoint, the termination clause was not unconscionable (Uniform Commercial Code, §§ 2-302, 2-309, subd. [3]). The court, in Division of Triple T Servs. v. Mobil Oil Corp. (60 Misc 2d 720, affd. 34 A D 2d 618), which is a case directly in point, held that reasonable notice of termination was given and that such termination without cause is in good faith and is not unconscionable. This court, as well as the court in the case of Division of Trifle T Servs. was aware of the legislation (S 4915, 1969) that was passed by the New York State Legislature in amending the General Business Law (new art. 9-C).
The legislation had a short life span as the Governor vetoed the bill. It provided that franchisors (the petitioners) deal fairly and equitably with their franchisees (the respondent) with reference to all aspects of the franchise relationship. Such legislation is sorely needed and although no bill has been introduced in the present session of the Legislature, this court feels that it should be done as quickly as possible. This court is constrained to follow the law of the State of New York as it exists, although it believes that this matter should not be laid to rest. The oil and gasoline companies of this country, in this day and age, no longer provide a luxury product but are almost a public utility, for without the easy flow of this product to the consumers, a calamity would strike this great nation which happens to be a nation on wheels. Yet, this quasi-public utility is allowed to function as a monolithic giant without regard to our citizens who contract with them and perform services for them. It is for our Legislature to protect our people from this type of action.
It is unconscionable, although legal at present, for the petitioner to be allowed, without cause, to terminate this lease after 19 years of annual renewal. The only salient reason that was given by the petitioner was the following: although this respondent did increase his sales approximately 25%, the company believes they can make more money with someone else as an operator. These operators are neither fish nor fowl, neither employees nor joint venturers; upon termination, regardless of their length of service, they are not even entitled to receive *604 the time-honored “ solid gold watch To say that the operator has no stake in the business is ludicrous. The petitioner would have this court believe that the regular customers of any service station go there because of the product. I think it would be hard to deny that regular customers go to a particular station because of the service and friendliness of the operator of that station, not because of the product alone. To say that this does not give rise to a property right on behalf of the operator is without solid foundation. To say that the operator is not entitled to a consideration for the good will developed over the years is not accurate; and to allow terminations without cause, stripping the respondent of his property rights without recompense, harks back to the early days of our Nation’s industrial development when corporations were king and the workers were only to be used. This court hopes fervently that it could grant equitable relief, but, as previously stated, it is precluded; but it also fervently hopes that the Legislature and the Governor of this State will see fit to enact, again, legislation which will protect this vast number of our citizens.