M. F., individually, and G. F. by her Guardian ad litem M. F., Plaintiffs,

*vs.*

F.,
Defendant.

*New Castle, June 30, 1961.*

*John Biggs, III,* Wilmington, for plaintiffs.

*Irving Morris* and *Joseph Rosenthal,* of Cohen & Morris, Wilmington, for defendant.

MARVEL, Vice Chancellor: This action seeks separate maintenance for G. F., a minor, the complaint claiming that defendant, the child's putative father, is liable for the support of such child under the terms of alleged contractual undertakings hereinafter referred to. Plaintiffs alternatively allege that if the contractual provisions pertaining to the child's support are not specifically enforceable in this Court that defendant in any event has the duty to support his infant child and that such duty is enforceable in this Court. Compare *Cohen v. Markel,* 35 *Del.Ch.* 115, 111 *A.2d* 702. The adult parties were not married at the time of the birth of the child, did not thereafter marry, and the mother is now married to one L. F.

During a period of approximately four months following G. F.'s birth out of wedlock on September 23, 1951, defendant readily provided for her needs, and on January 30, 1952 executed the first of two formal support agreements separately acknowledging that he was G. F.'s father. Under the terms of the first agreement defendant undertook in consideration of the withdrawal by the mother of a pending bastardy proceeding to pay fifty dollars per month over a period of two years for the child's support. He also agreed in such written undertaking to renegotiate with the mother his financial obligation towards the child at the end of such period for the purpose of revising it "* * * up or downward depending upon the circumstances and needs of the parties at that time." The mother agreed on her part to apply such moneys to the proper care of the child, and it is indicative of the parties' understanding of the general and continuing nature of defendant's obligation that he undertook to execute a judgment note in the child's favor in the amount of $10,000 to be recorded in the event of his death prior to the expiration of the

original or of any supplemental support agreement, such note to be presented as a claim against his estate.

A second agreement was in due course renegotiated and thereafter entered into on July 20, 1954 under the terms of which defendant agreed to pay the sum of seventy-five dollars per month for the child's support over a period of sixty months and again agreed at the expiration of such term to renegotiate the terms of his financial obligation towards the child in the light of circumstances then existing.[1] In addition, defendant again in contemplation of his possible death during the term of the new agreement agreed to deposit with the mother an insurance policy to be maintained in force by him for a period of ten years in return for which the judgment note would be cancelled. It was also agreed that in the event defendant should become unemployed the agreement would be subject to immediate revision notwithstanding its term of five years.

Plaintiffs' first contention is that defendant's contractual undertakings towards the child may be specifically enforced in that the Court may properly fix the amount which defendant should reasonably pay for the child's support notwithstanding the absence of a precise written commitment on his part. In reply, and in support of his pending motion to dismiss defendant points out that the paragraphs of the second agreement pertaining to the intention of the parties to make a future supplemental agreement clearly constitute an agreement to enter into a contract in the future and that there is nothing before the Court capable of being specifically enforced, it being pointed out that what the parties did was merely to agree to negotiate. This defendant has refused to do.

 It is settled law in this Court that a party seeking specific performance must rest his case on an agreement which is clear

---

1. In addition to repeating the language of the first agreement as to renegotiation and revision, paragraph 5 of the second agreement reads in part as follows: "5. It is hereby expressly declared to be the intention of the parties hereto that, at the termination of the period covered by the Supplemental Agreement, the parties themselves shall make a new Supplemental Agreement covering support and maintenance of the said child for a further period yet to be decided upon."

and definite and in which there is no need for the Court to be asked to supply essential contractual elements, *Godwin v. Collins,* 3 *Del.Ch.* 189; 4 *Houst.* 28, and *Simms v. Schwartz,* 15 *Del.Ch.* 195, 134 *A.* 99. Thus it is clear that this Court may not in an action for specific performance make a new contract for the parties, action which would apparently be required in a case such as this in order to grant the relief sought, the parties having merely agreed to renegotiate and revise the essential terms of an agreement after its expiration, such renegotiation to cover the amount of support to be paid and the duration of the extended term. The parties having obviously contemplated the drafting and execution of an entirely new contract, in the light of plaintiffs' case as pleaded and argued it is not in my opinion a proper judicial function to decide what would be a reasonable support arrangement for an indefinite future period. Compare *Raisler Sprinkler Co. v. Automatic Sprinkler Co.,* 6 *W.W.Harr.* 57, 171 *A.* 214. See also *Vale v. Atlantic Coast and Inland Corp.,* 34 *Del.Ch.* 50, 99 *A.2d* 396, 399, and *Hindes v. Wilmington Poetry Society,* 37 *Del.Ch.* 80, 138 *A.2d* 501. In the *Vale* case the Court stated that an agreement to make a contract in the future will be enforced if "* * * the agreement specifies all of the material and essential terms including those to be incorporated in the future contract."

■ Finally, while the contract apparently became effective upon its execution by the mother in New York, there would appear to be no split in authority on the proposition that unless an agreement to make a future contract is definite and certain upon all the subjects to be embraced it is nugatory, 12 *American Jurisprudence, Contracts,* § 24.

Plaintiffs insist that the parties have in effect provided a sufficient guide for the revision of future support payments, namely that they be made to depend "* * * upon the circumstances and needs of the parties hereto at that time * * *" and that the Court may on the basis of such standards arrive at specific terms. However, no contractual clause or other facts are pleaded which would establish a fair standard for future support payments, and there is

no indication as to what is to be the term of such new agreement, such essentials being left to future bargaining between the adult parties in interest. I therefore conclude that plaintiffs have not pleaded an agreement susceptible of specific enforcement in this Court, and defendant's motion to dismiss is granted *pro tanto*. In conclusion, it should be noted that the agreement itself clearly indicates a method whereby plaintiffs can seek to bring defendant to terms and further that plaintiffs have not, of course, sought an order compelling defendant to negotiate.

Does this Court, however, have inherent jurisdiction to award separate maintenance to an illegitimate child in the absence of an enforceable contract of the father to provide such? At common law the putative father of an illegitimate child was under no legal obligation to support him, 10 *C.J.S. Bastards* § 18c; *7 American Jurisprudence, Bastards* § 79, and 30 *A.L.R.* 1069. An illegitimate was held to be *filius nullius*, and until the adoption of statutes for such purpose the father was not legally bound to support his bastard. In short, there is no principle of law other than that expressed in the bastardy statutes which requires a father to support his illegitimate child unless he has made some express or implied undertaking to do so, *Cameron v. Baker,* 1 *Car. & P.* 268, 171 *Eng. Reprints* 1190; *Hesketh v. Gowing,* 5 *Esp.* 131, 170 *Eng. Reprints* 762; *Jennings v. Brown,* 9 *M. & W.* 496, 152 *Eng. Reprints* 210; *Hicks v. Gregory,* 8 *C.B.* 378, 137 *Eng. Reprints* 556, and *Linnegar v. Hodd,* 5 *C.B.* 437, 136 *Eng. Reprints* 948, 39 *A.L.R.* 434. And while a petition for the support of an illegitimate daughter was denied in *Fursaker v. Robinson, Prec. in Chancery* 475, 24 *Eng. Reprints* 213, petitions for enforcement of settlement agreements for the benefit of illegitimates were permitted in *Marchioness of Annandale v. Harris,* 2 *P.Wms.* 432, 24 *Eng. Reprints* 801, and *Knye v. Moore,* 1 *Sim & St.* 61, 57 *Eng. Reprints* 24.

It follows that this Court in the absence of appropriate legislation does not have jurisdiction over a claim for the support of an illegitimate absent a binding agreement inasmuch as prior to 1792 the High Court of Chancery of Great Britain has no such juris-

diction, *Glanding v. Industrial Trust Co., 28 Del.Ch. 499, 45 A.2d 553; duPont v. duPont, 32 Del.Ch. 413, 85 A.2d 724.* .

Accordingly, plaintiffs' second cause of action must also be dismissed.

Order on notice.