G. L., the putative father, Appellant Below, Appellee,

v.

S. D., the mother, Appellee Below, Appellant.

Supreme Court of Delaware.

Submitted March 16, 1979.

Decided Sept. 4, 1979.

---

Alene Berkowitz and Martin A. Schagrin of Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, for appellee.

Charles P. Coates, III, A. James Gallo and James T. Perry of Gallo & Benson, Wilmington, for appellant.

James A. Littmann, Asst. Atty. Gen., and Robert M. Willard, Asst. Atty. Gen., Wilmington, amicus curiae.

Before DUFFY, QUILLEN and HORSEY, JJ.

HORSEY, Justice:

The issues raised in this appeal are (1) whether the Family Court has civil jurisdiction to hear a child support action where paternity is contested; and if so; (2) what is the standard of proof of paternity.

In an action for non-support brought by the child's mother against the putative father, the Family Court, treating the matter as a civil proceeding, found the evidence "clearly and convincingly" to establish defendant to be the child's father; and the Court imposed a support order upon him. On appeal, the Superior Court reversed, holding that Family Court's only jurisdiction over support actions where paternity was in issue was criminal in nature. Hence, for a support order to be entered against a putative father, paternity was required to be proven by the criminal standard of "proof beyond a reasonable doubt."

The child's mother appeals and the Attorney General of Delaware has joined in the appeal as *amicus curiae*. Both contend that legislation enacted in 1974 conferred on the Family Court jurisdiction over civil as well as criminal actions for non-support of children whether born in or out of wedlock.

## I

Since the Family Court is a statutory court, we first look at the Court's original jurisdiction over actions brought for the support of an illegitimate child where paternity was contested. We find (as did the Superior Court) that at least prior to the Family Court becoming a state-wide court under the Family Court Act of 1971, its jurisdiction over such actions was indisputably criminal in nature.[1] *State v. Grace*, Del.Supr., 286 A.2d 754 (1971); *Wilderman v. Wilderman*, Del.Super., 330 A.2d 149 (1974).

In *Grace*, this Court held that a Family Court action brought by the State under 13

---

1. All references to the Delaware Code prior to 1974 are to the 1953 Code, as amended. See 10 *Del.C.* § 951(6), (7) and (9) as to the Family Court of New Castle County; and 10 *Del.C.* § 1151(5), (6) and (15) as to the Juvenile Court of Kent and Sussex Counties; with the stated sections making explicit reference to 13 *Del.C.* Ch. 5 (in particular § 502 et seq.) and Ch. 13 (in particular § 1321 et seq.).

*Del.C.* § 502[2] was a criminal or quasi-criminal proceeding so as to require the State to prove paternity beyond a reasonable doubt. Chief Justice Wolcott rejected the contention that legislative enactments, in particular 13 *Del.C.* § 508, had changed non-support proceedings for illegitimate children from criminal to civil so as to reduce the burden of proof of paternity from "beyond a reasonable doubt" to a "preponderance of the evidence" standard, and stated:

"As we have pointed out in this State, the refusal to support an illegitimate child is a criminal, or at least a quasi-criminal, offense, conviction of which can invoke severe penalties. The elements to be proven are paternity of the child and the refusal to support. Under the *Winship*[3] case it is clear that these elements must be proven by the State beyond a reasonable doubt. However, the Family Court found both elements as facts by reason of a preponderance of the evidence. This would seem to be clear error unless the nature of the proceedings has been changed by the General Assembly from criminal to civil." [Footnote added]. 286 A.2d 754 at 755.

However, in any examination of Delaware statute law as to child support before 1974, 13 *Del.C.* § 702[4] must also be considered and placed in its proper jurisdictional setting. In a line of cases beginning with *Cohen v. Markell*, 35 Del.Ch. 115, 111 A.2d 702 (1955) and extending through *Spruance v. Spruance*, 35 Del.Ch. 188, 113 A.2d 877 (1955) to *Wright v. Wright*, Del. Supr., 39 Del.Ch. 360, 164 A.2d 317 (1960) a § 702 support action was determined (a) to be available solely for the enforcement of civil support obligations[5] and (b) to lie within the exclusive jurisdiction of the Court of Chancery.

Thus, if the question here presented had arisen under the Family Court's original statutory scheme and before the court became a state-wide court in 1971, the decision fairly clearly would have been that the action was criminal in nature; lay under § 502 and not § 702; and that under *Grace*, proof of paternity beyond a reasonable doubt was required for a support order to be imposed upon a putative father.

## II

Has subsequent legislation affecting the Family Court enacted in 1971 or 1974 altered this result? We think so, and therefore find that the Superior Court erred in concluding that the Family Court lacked jurisdiction to entertain this action as a civil proceeding.

---

**2.** Section 502(a) provided:

"§ 502. *Desertion or failure to support wife or child; penalty.*

(a) Any husband who, without just cause, deserts or wilfully neglects or refuses to provide for the support and maintenance of his wife in destitute or necessitous circumstances, or any parent who, without lawful excuse, deserts or wilfully neglects his or her legitimate or illegitimate child, so that such child shall become a neglected child as defined in Section 901 of Title 10, or refuses to provide for the support and maintenance of his or her legitimate or illegitimate child or children under the age of 18 years in destitute or necessitous circumstances, shall be fined not more than $500 or imprisoned at hard labor in such prison of this State as determined by the court for not more than 1 year, or both. The parent of any illegitimate child or children under the age of 18 years shall provide for the support and maintenance of such illegitimate child or children." 13 *Del.C.* § 502 (1953).

**3.** *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

**4.** 13 *Del.C.* § 702, enacted in 1943, provided: "The legal duty to support a minor child rests solely upon the father if he is living and able to provide such support, but if the father is not living or is unable to provide such support, then the mother, if she is living and able, shall provide such support. Such duty to support shall not exceed the amount necessary to provide for the essential needs of the minor child, such as food, clothing, shelter, medical expenses and reasonable education."

**5.** In *Spruance*, Chancellor Seitz compared 13 *Del.C.* § 502 with 13 *Del.C.* § 702, stating, "The eighteen year limitation in § 502(a) is used solely in connection with the creation of a misdemeanor. On the other hand § 702 deals with the legal duty of a father to support his minor children generally. I believe § 702 refers to a father's civil obligation. I conclude therefore that the two statutes are not inconsistent and that § 702 controls in this case." 113 A.2d at 878.

In 1971 our Legislature established a state-wide Family Court by "merging" into one court the existing Family Court of New Castle County and its equivalent for Kent and Sussex Counties, formerly known as the Juvenile Court of Kent and Sussex Counties. 58 *Del. Laws* C. 114 and 116. In *Wife P. v. Husband P.*, Del.Ch., 287 A.2d 409 (1972), this legislation, and in particular § 921 as amended,[6] was construed by then Chancellor Duffy, now of this Court, as intended to confer upon the state-wide Family Court jurisdiction over child support actions previously exercised by the Court of Chancery and as thereby divesting Chancery of any further jurisdiction over civil child support actions. In *Scribner v. Chonofsky*, Del.Ch., 310 A.2d 924 (1973), the court construed 10 *Del.C.* § 921(3) as expressly conferring on the Family Court exclusive original civil jurisdiction over support actions previously filed in Chancery under 13 *Del.C.* § 702.

How, then, did the court below conclude that Family Court lacked civil jurisdiction over this proceeding? It did so by finding under *M. F. v. F.*, 40 Del.Ch. 17, 172 A.2d 274 (1961) a decisional limitation on the extent of civil jurisdiction conferred by the 1971 Act upon the Family Court. There the Court held that Chancery had never exercised jurisdiction over non-support actions under 13 *Del.C.* § 702 where paternity was contested.[7] Hence, in this case, the court below held that the 1971 law, and specifically, 10 *Del.C.* § 921(3) could not be read as expanding Family Court's civil jurisdiction over child support actions to include illegitimate children if paternity were contested.

### III

This brings us to the 1974 statute, the most recent legislation concerning desertion and support, and the Family Court's jurisdiction over such matters. 59 *Del. Laws* C. 567. The lower court ruled that this action, though controlled by the 1974 Act, was triable only as a criminal proceeding since paternity was in issue. It reached this result by finding the 1974 Act to be a statute of limited purposes: (1) to transfer to the Family Court Chancery's previous civil jurisdiction over support exercised under 13 *Del.C.* § 702; and (2) to repeal the Bastardy Act, subchapter II, § 1321 through § 1335 of Title 13, and (3) to restate Chapter 5 of Title 13 by putting a modern gloss on archaic terminology. Support for the position that the 1974 Act was intended to do no more than transfer to the Family Court Chancery's previous § 702 jurisdiction is found in the Act's preamble language.[8]

---

**6.** 10 *Del.C.* § 921, as amended by § 921 of the 1971 Act, reads, in part:

"The [Family] Court shall have exclusive original civil jurisdiction in all proceedings in this State concerning . . .

\* \* \* \* \* \*

(3) Enforcement of any law of this State or any subdivision or any regulation promulgated by a governmental agency, or any petitions or actions, for the education, protection, control, visitation, possession, custody, care, or support of children."

**7.** As the lower Court here stated: "This was said to be so because at common law the putative father of an illegitimate child was under no legal obligation to support the child. The equity jurisdiction of the Delaware Court of Chancery embodied the complete system of equity jurisdiction as administered by the High Court of Chancery of Great Britain, and prior to 1792 the High Court of Chancery had no jurisdiction over such cases. Therefore, Delaware's Court of Chancery was found not to have jurisdiction. Thus, while earlier Chancery cases noted the apparent dichotomy between criminal and civil non-support cases brought about by 13 *Del.C.* § 502 and § 702, the Court in *M. F. v. F.* did, in effect, hold that § 702, the civil support section, was not an appropriate vehicle under which to seek support of illegitimate children in Chancery." Del.Super., C.A. No. 5198–77, slip op. at 6 (Dec. 28, 1977).

**8.** "WHEREAS, the Court of Chancery has jurisdiction over civil enforcement of the duty of support and the Family Court of the State of Delaware has jurisdiction over criminal enforcement of the duty of support; and

WHEREAS, persons seeking support occasionally institute actions in both Courts simultaneously or seek support first in one court and then, if dissatisfied, in the other; and

WHEREAS, to obviate the resulting confusion and duplication of effort it would be desirable to establish a uniform procedure in support actions with original jurisdiction in a single court, and the Family Court is best suited to exercise that jurisdiction." 59 *Del. Laws* C. 567.

However, if the extent of the Act's grant of civil jurisdiction to Family Court were limited to the transfer of Chancery's § 702 jurisdiction, the legislation was unnecessary, for that purpose had already been accomplished by the 1971 legislation, as construed in *Wife P. v. Husband P.*, supra. Further support for construing the 1974 Act as granting far broader civil jurisdiction on the Family Court is suggested in the Act's title [9] and confirmed by § 507. Setting out the Court's new jurisdiction, § 507 provides,

> "(a) The Family Court of the State of Delaware shall have exclusive original jurisdiction *over all actions arising under this Chapter.* The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State of Delaware." (emphasis added). 59 *Del. Laws* C. 567, § 507.

While the second sentence of § 507(a) was intended to confirm the transfer of jurisdiction over former § 702 actions to the Family Court, the first sentence encompasses a separate grant of jurisdiction over "all actions arising under this Chapter" and constitutes a declaration of Family Court's new jurisdiction without reference to the old provisions of Chapter 5, § 501 through § 512; and Chapter 13, § 1321 through § 1335 (subtitled "Illegitimacy Proceedings", commonly known as the Bastardy Act), all of which were thereby repealed. In this light we view the 1974 Act as a complete restatement of the Delaware law as to desertion and support.

Using § 507(a) as a starting point for determining *scope* of Family Court's restated jurisdiction to enforce support, we find that "actions arising under this Chapter" obviously refers to the preceding four sections of Subchapter I captioned, *"Duty to Support"*, that is, "Duty to support minor child"—§ 501; "Duty to support spouse"—§ 502; "Duty to support a poor person"—§ 503; and "Duty to support woman pregnant with child conceived out of wedlock"—§ 504. As to duty to support a child under the age of 18, § 501(a) [10] imposes that duty "primarily upon his parents," and § 501(c) [11] imposes that duty "equally upon both parents." And of most significance to the disposition of this case are the provisions of § 501(a) and § 501(c) stating that the duty to support a minor child extends to a child "whether born in or out of wedlock." These, then are the new statutory support duties created by the 1974 Act, duties imposed equally upon both parents, and duties as to a minor child that extend to a child "whether born in or out of wedlock."

Thus, applying the 1974 Act to the instant case, it is clear that the mother's support action brought on behalf of her child born out of wedlock was authorized under § 501 and lay against the child's natural father under § 501(c) since the duty of support is stated therein to rest "equally upon both parents."

However, since the respondent denies being the child's father, the question then becomes whether the action against him could be asserted as a civil action or solely as a criminal action, as the court below ruled. We think the correct answer is that either a civil or a criminal action could be asserted against the putative father under the 1974 Act, as set forth in 13 *Del.C.*, Chapter 5 as amended; and that this conclusion is borne out by the manner in which the statute is now structured. Chapter 5 of Title 13 as amended is now divided into three parts or subchapters. Subchapter I, already discussed, spells out the legal

9. "AN ACT . . . ESTABLISHING CIVIL AND CRIMINAL ACTIONS CONCERNING DESERTION AND SUPPORT AND CONFERRING EXCLUSIVE ORIGINAL JURISDICTION OVER ALL SUCH ACTIONS UPON THE FAMILY COURT . . . ." 59 *Del. Laws* C. 567.

10. § 501(a) provides: "The duty to support a child under the age of 18 years, whether born in or out of wedlock, rests primarily upon his parents." 13 *Del.C.* § 501(a).

11. § 501(c) provides: "The duty to support a child under 18 years of age, whether born in or out of wedlock, shall rest equally upon both parents." 13 *Del.C.* § 501(c).

duties thereby created and confers on the Family Court exclusive jurisdiction over the enforcement of such duties. The Act's remaining two subchapters then delineate and separately treat Family Court's civil enforcement jurisdiction from its criminal enforcement jurisdiction.[12]

■ As a result of this dual conference of civil and criminal enforcement powers on Family Court, we think that under new Chapter 5 of Title 13, it is now clear beyond question that an action for desertion or support may be pursued in Family Court either civilly or criminally. Hence, since, in the instant case, petitioner, mother, chose to proceed by petition for civil enforcement, the Family Court correctly disposed of the matter as a civil action and as governed by the civil enforcement provisions of Subchapter II of Chapter 5, Title 13.

On the other hand, if petitioner had chosen to proceed criminally against the putative father for willful refusal to provide for the support of her child in violation of 13 *Del.C.* § 521,[13] the criminal enforcement provisions of Subchapter III, Chapter 5 of Title 13 would have applied; the procedure would be as set forth under § 523,[14] (with the filing of an information thereunder by the State if probable cause were found based on a verified complaint); and the action would proceed as a criminal action, in the same manner as criminal actions under old § 502—on which new § 521 is based. Such action being an action for criminal enforcement of a support obligation instituted in the name of the State, would be treated in all respects as a criminal action

as heretofore under old § 502 and the required standard of proof of paternity would be the criminal standard of proof of beyond a reasonable doubt. See *State v. Grace,* supra.

### IV

■ This brings us to the final related question, namely, the proper standard of proof of paternity in a civil enforcement action for support of a minor child brought under Subchapter II, Chapter 5 of Title 13. In the instant case, the Family Court applied the "clear and convincing" standard of proof in a civil action. The Family Court did so following precedent in that Court since 1974 of applying the "clear and convincing" standard, reasoning that a higher civil standard of proof than "preponderance of the evidence" should apply to determine an issue of paternity out of concern for the difficulty of answering such a charge and the consequences of such a finding.[15] See Schatkin, *Disputed Paternity Proceedings,* p. 105 (4th ed. 1967). However, while serious financial consequences may be said to hinge on a determination of paternity, similarly serious consequences follow from application of the "preponderance of the evidence" standard in all fields of civil law, including contract and tort. That alone is not reason enough to raise the standard of proof.

Further, the distinction between proof by "preponderance of the evidence" and proof by "clear and convincing evidence" is not easily applied even if conceptually apparent. See *Addington v. Texas,* —— U.S.

---

12. It was this failure in prior enactments of Chapters 5, 7 and 13 of Title 13 that resulted in so much litigation and interpretive case law, referred to above.

13. "§ 521. *Desertion of failure to support spouse or child; penalty.*
    Any person who, without just cause, deserts or willfully neglects or refuses to provide for the support of a spouse in destitute or necessitous circumstances, or a parent who, without just cause, deserts or willfully neglects or *refuses to provide for the support of a child* under the age of 18 years and in destitute or necessitous circumstances, whether such child was born in or out of wedlock, shall be fined

not more than $500 nor imprisoned for not more than 6 months, or both." 13 *Del.C.* § 521.

14. "§ 523. *Procedure.*
    Proceedings under this subchapter may be instituted upon complaint made under oath or affirmation by the spouse, child or by any other person against any person where there is probable cause to believe such person has committed an offense under this subchapter. Proceedings shall be by information." 13 *Del.C.* § 523.

15. However, under Family Court Rule 220(d) the burden of proof standard in civil actions is stated to be that of "a preponderance of the evidence."

——, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) for discussion of the problems and practicalities of distinguishing the terms, yet of the need to do so in certain civil cases involving "a significant deprivation of liberty that requires due process protection" ("clear and convincing" standard of proof applied in a civil proceeding by the State of Texas for indefinite commitment to a state mental hospital of an alleged mentally ill person) or involving the protection of "particularly important individual interests" ("clear, unequivocal and convincing" standard of proof applied in deportation and denaturalization proceedings) so as to minimize the risk of erroneous decisions. See also 30 Am.Jur.2d, *Evidence*, § 1167, page 344; 32A C.J.S. *Evidence*, § 1023, page 663.

While there is a split of authority on this question in the paternity-child support area, the majority position and that of writers in this field of law favors the "preponderance of the evidence" standard. See 10 C.J.S. *Bastards* § 95; 10 Am.Jur.2d *Bastards*, § 107; H. Clark, *The Law of Domestic Relations in the United States* (1968) at 168. The adoption of this standard would also be consistent with recent legislation as to inheritance by a person born out of wedlock as a child of a deceased mother or father under the intestate succession law of Delaware.[16] We conclude that the "preponderance of the evidence" standard should be adopted for proof of paternity in a civil enforcement action brought under Subchapter II, Chapter 5 of Title 13 for support of a child born out of wedlock.

For the reasons stated, we reverse the judgment of the Superior Court and direct that the judgment of the Family Court be reinstated.

Reversed.

---

**16.** See 12 *Del.C.* § 508(2)b stating that "paternity is established by an adjudication before the death of the father or is established thereafter by preponderance of the evidence; except . . . .."